**DRAGO v. DORSEY**

---

(March 10, 1930. Opinion and Decree.)
(April 7, 1930. Rehearing Refused.)

---

Guy J. D'Antonio, of New Orleans, attorney for plaintiff, appellee.

P. L. Fourchy, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Plaintiff, a widow, alleging that her three year old son was killed as the result of the explosion of a steam boiler belonging to defendant, sues for damages to compensate her for her loss.

Defendant is the owner of a dry cleaning and pressing establishment located on the corner of Dauphine and Ursuline streets.

The young child, in the custody of an aunt, sister of plaintiff, was walking along the sidewalk of Dauphine street, when a terrific explosion occurred on the premises of defendant. It is alleged by plaintiff, and, in our opinion, the preponderance of the evidence sustains the allegation that a heavy board fence surrounding the premises was demolished by the force of the explosion and fell upon the little boy while he was walking on the sidewalk.

Defendant maintains that, at the time of the explosion, the child had not yet reached a position alongside the fence, and that, after the force of the explosion had expended itself, the child was still in a place of safety some fifty feet or so away; that it was attracted to the scene of the accident by the noise, and that the aunt carelessly allowed it to run from its place of safety to a dangerous position alongside the fence; that the fence was knocked down by the surging of the crowd which accumulated, and that, therefore, the real cause of the child's death was not the explosion, but was the negligence of the aunt in not maintaining a proper watch and guard; and that, as the aunt stood "in loco

parentis" to the child, the negligence of the aunt should be imputed to the mother, plaintiff here, and should bar her recovery.

This defense, though ingenious, cannot prevail, because we are convinced by the evidence that the collapse of the fence followed immediately after the explosion, and that the aunt, stunned and confused as she was by the violence of the explosion and by the escaping smoke and steam, was powerless to prevent the resulting injury to the little boy, or to remove him to a place of safety.

We feel certain that the falling of the fence was the direct, immediate result of the explosion and was not caused by the surging of the crowd. That it fell outward to the sidewalk and not inward to the yard is not denied, and we do not understand how the surging of the crowd, which, if there was a crowd, would have exerted pressure from the outside, could have caused the fence to fall to the outside sidewalk. On the contrary, such a physical force would have pushed the fence into the yard—not the other way.

It is entirely possible that, at the moment of the explosion, the little boy was not immediately alongside the fence, but he was certainly within a few feet of it, and if he and his aunt were so near to it that the explosion rendered the aunt incapable of exercising proper judgment and so confused her that she could not prevent the child from running towards the danger, she cannot be charged with negligence in this particular. Odom vs. St. Louis S. W. R. Co., 45 La. Ann. 1201, 14 So. 734, 23 L. R. A. 152; Root vs. Kansas City Southern R. Co., 195 Mo. 348, 92 S. W. 621, 6 L. R. A. (N. S.) 212; Harrington vs. Los Angeles R. Co., 140 Cal. 514, 74 P. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85; Clark vs. Wilmington & W. R. Co., 109 N. C. 430, 14 S. E. 43, 14 L. R. A. 749.

Conceding, arguendo, that the aunt was not with the child at the time, that she had gone into the drug store on the corner and had allowed the child to wander alone along the sidewalk, and that this was an act of negligence on her part, nevertheless, defendant's position is not bettered, because the results which followed could not in any sense be said to have had any causal connection with the negligence of the aunt. If the child had walked into the street immediately in front of an approaching automobile, there would have been causal connection between the negligent act of allowing the child to wander at large and the resulting accident, but we cannot understand how it can be argued that there is even remote connection between allowing a child to wander unattended on a sidewalk and his death as the result of a boiler explosion in adjacent premises.

"Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not, in my opinion, make out a case of negligence upon which an action in damages will lie." N. O. & N. E. R. Co. vs. McEwen & Murray, 49 La. Ann. 1184, 22 So. 675, 680, 38 L. R. A. 134.

Of course, the immature age of the child precludes any suggestion that he, himself, may have been negligent in running towards instead of away from the danger.

"We do not think that the doctrine of contributory negligence applies to a child less than four years of age.

"A child of such an age is generally incapable of choosing between right and wrong, good and evil, prudence and rashness." Hamilton & Wife vs. Morgan's L.

& T. R. & S. S. Co., 42 La. Ann. 824, 8 So. 586, 587.

"A child of the age of five years and seven months is prima facie incapable of contributory negligence." Westerfield vs. Levis, 43 La. Ann. 63, 9 So. 52.

We are of the opinion, therefore, that the plea of contributory negligence cannot prevail, and that the cause of the death of the boy was the explosion.

It becomes necessary to investigate the cause of the explosion, because the defendant is not liable, unless there was fault on his part.

Defendant contends that plaintiff should have alleged and was called upon to prove the cause of the explosion. We disagree with defendant in this. The doctrine of "res ipsa loquitur" is plainly applicable here. In Lykiardopoulo vs. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575, 576, Ann. Cas. 1912A, 976, which resulted from the explosion of a steam boiler, the allegation made by plaintiff was that the explosion "was caused by defendant's negligence, want of skill and attention; that defendant failed to care for said boiler, and by their negligence and want of skill and attention the boiler was weakened and unable to carry the steam pressure to which the defendant negligently subjected it." In overruling an exception of vagueness, the district judge said:

"I have some doubts, but, considering that the defendants were in charge of the boiler, and have knowledge as to its conditions, and how it was being operated, I think that no injustice can be done by overruling the exceptions."

When the matter went to the Supreme Court, Mr. Justice Provosty, as the organ of that court in approving the ruling of the district court, used the following language:

"We think this ruling was correct. In effect, the allegation is that the explosion is not to be attributed to any inherent defect in the boiler, but that it resulted from defendant's want of care and skill in its operation. This was a statement of the ultimate facts. Ordinarily, where only the ultimate facts are alleged, and particulars are called for, the court should require the pleader to give the particulars intended to be relied upon; but cases readily suggest themselves which ought to be an exception to that rule, and the present case would seem to be one of them, for the reason assigned by the learned trial judge, namely, that the manner of the operation of this boiler was peculiarly within the knowledge of the defendants. In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself—res ipsa loquitur —that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. That rule is of peculiar applicability in cases of boiler explosions."

The burden, then, by the application of the doctrine of "res ipsa loquitur," was placed upon the defendant to prove that the explosion resulted from causes beyond its control, and that proper care and

precautions in inspection and operation could not have prevented it. We have experienced no difficulty in reaching the conclusion that this burden has not been satisfactorily sustained by defendant.

The boiler was a very old one. It had been patched and repaired, and the experts who examined it testified that the thickness of the metal at the point of the break indicated that it should not have been subjected to a pressure of more than about twenty pounds to the square inch, whereas defendant admitted that a pressure of forty-five pounds was customary, and that the safety gauge was set to "pop off" at seventy-five pounds.

Mr. H. L. McLean, a boiler inspector, gave the following evidence in referring to an interview with defendant, while he (defendant) was being examined in the office of the fire marshal after the accident:

"At the time we had Dorsey and his engineer in the Fire Marshal's office they were sworn in and questioned. I asked them a great many questions, and, in fact, so many,—they were pertinent questions, every one,—about the way in which they operated that boiler. The most important facts were that they switched the safety valves and the gauges, which was dangerous practice and not permitted by any standard known rule for safe operation of steam boilers. Dorsey admitted that he had no insurance nor any inspection, or that any inspection of the boiler had been made. Quite frankly, I would say, if I had been inspecting that boiler, I would have condemned it, because there were several patches, round patches, in the bottom ring which exploded, which showed its weakened condition at the time they were patched, and it was very evident that he must have known, or somebody, whoever put those patches there, knew that that ring was very insecure. It is the place in a boiler of that type that would fail. I also asked Dorsey if he knew that it was dangerous to operate a boiler like that, and he admitted freely that he did know it was dangerous. He said he knew that a boiler was a dangerous thing if it was not properly taken care of, that it was dangerous. That's almost the words that he used."

Considerable evidence was produced by Dorsey in an attempt to show that the boiler was in good condition, and that latent undiscoverable defects were responsible for the explosion.

This evidence is of the weakest character and cannot be accepted, in view of the testimony of McLean and the corroborating evidence of other experts.

Since the cause of the explosion was the weakened condition of the boiler, and since Dorsey should have known of this condition, he must respond in damages for the loss he has caused to plaintiff.

We feel, however, that the amount awarded by the district court, $3,500, is somewhat in excess of awards which have been allowed by this and the Supreme Court in similar cases. There was only one parent here, and therefore the award is not to be shared in by two persons, as is usually the case. In view of this and of the immature age of the child, $2,500 is more nearly in line with former awards.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof to $2,500, with legal interest from judicial demand, and, as thus amended, affirmed. Costs of appeal to be paid by appellee.