### SEITHER et al. v. POTER et al.

No. 17258.

Court of Appeal of Louisiana. Orleans.

March 11, 1940.

Rehearing Denied April 8, 1940.

Vosbein & Christensen, of New Orleans, for appellants.

Clarence E. Strauch, of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs, Mr. and Mrs. Milton W. Seither, are the surviving parents of their six-year-old daughter, Gaynell Seither, who died on August 13, 1938, as the result of physical injuries sustained at about 8:35 o'clock on the night of August 8, 1938, when she was struck by an automobile driven by James E. Poter, Jr., the minor son of James E. Poter, Sr., the owner of the automobile.

Proceeding under Act No. 156 of 1912, as amended, commonly known as the Pauper Act, and charging that the accident which resulted in the death of their daughter was caused by the negligence of young Poter and that, at the time, he was an unemancipated minor and was living with his father, plaintiffs pray for judgment against both the father and the son, alleging the father to be responsible for the results of the torts of his minor son living with him and alleging, also, the liability of the said minor for the results of his own acts. They pray for solidary judgment against the two defendants in the sum of $25,407.74. They sought and obtained an order appointing Poter, Sr., as the tutor ad hoc of his minor son and authorizing the said tutor ad hoc to defend the action on behalf of the said minor.

After the filing of certain exceptions, which were overruled by consent, defendants filed an answer in which they denied all charges of negligence on the part of young Poter, and asserted that the little girl had run from the sidewalk into the side of the automobile and that, in spite of all the efforts of young Poter to swerve and to avoid striking her, the accident occurred and the fatal injuries were sustained by the child.

In the District Court there was judgment for defendants and plaintiffs have appealed.

The specific acts of negligence charged against young Poter are:

First, that he was driving the automobile at a speed of 45 miles per hour, in violation of the provisions of the traffic ordinance of the City of New Orleans, to-wit: No. 13,702, C.C.S., which ordinance, in Article V, Section 3, requires a reasonable and proper speed at all times and provides that "* * * it shall be prima facie lawful for the driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such speed would be unsafe it shall be unlawful: * * * Twenty miles an hour in a residence district * * *".

Second, in that he did not have his car under control as he approached the corner.

Defendants, relying on the contention that young Poter was driving the car at a safe and reasonable speed and was maintaining a careful lookout ahead, assert that suddenly the young girl darted out from the obscurity which had been provided by the property on the corner, ran across the sidewalk and into the street, after there was no longer an opportunity for young Poter to bring his car to a stop.

The accident occurred at the corner of Constance and Toledano Streets. The automobile was on its way up Constance Street, which is a one-way street paralleling the Mississippi River, traffic thereon being limited to that proceeding in an uptown direction. Toledano Street crosses Constance Street at a right angle. The child had proceeded along the lower sidewalk of Toledano Street towards the Mississippi

River and towards Constance Street and had then crossed the sidewalk and had turned to go diagonally from the lower lake corner to the upper river corner of the intersection.

It is argued on behalf of defendants that the child was not crossing Constance Street on the regular pedestrian walkway and that, therefore, there did not rest upon young Poter so great an obligation to discover her as would have rested upon him had she been crossing in the place regularly used by pedestrians. There would be much in this argument if the child had been crossing not at a corner but at some point between corners—in the middle of the block, for instance—but we cannot see the force of this contention here since the child did step into the street at the corner, where pedestrians usually cross, and then proceeded diagonally to the far corner. The only effect of her crossing diagonally—since she was then going to some extent in the same direction in which the automobile was proceeding—was to afford to young Poter a little more time for stopping than would have been available to him had she attempted to cross from the lower lake corner to the lower river corner; and it appears to us that, had Poter, as he approached the corner, exercised due care either in the matter of speed, or in the maintenance of a proper lookout, he would have been able to bring his car to a stop even though the girl did herself carelessly run out into the street without looking, for it is shown that the sidewalk which she crossed was 7 feet 10 inches in width and that, in addition to crossing the sidewalk, she had gone 22 feet into the street before she was struck.

It is argued on behalf of defendants that, since she was struck almost exactly in the center of the intersection, she could not have gone 22 feet since one of the streets is only about 25 feet wide and the other about 26. But by the application of the principles of geometry it will be found that the exact center of such an intersection is almost 20 feet from any one of the corners. Furthermore, the point—22 feet from the corner at which it is said she was struck—was not fixed as the exact center of the intersection, but was fixed by eye-witnesses at the spot at which they saw her when contact with the automobile occurred. ·

There was ample light on the corner at the time and not only could she have been seen easily, but in fact she was seen, as Poter himself states that he saw her as she stepped from the sidewalk into the street. Had he been driving at a moderate speed, or had he been maintaining a careful lookout, surely he would have seen her a few seconds sooner, while she was crossing the sidewalk.

However, not only did he fail to stop before striking her and while she was traversing the 30 feet between the point at which she stepped out from the obscurity afforded by the adjacent property and the point at which she was struck, but, as a matter of fact, after striking the child he proceeded to a point 15 or 20 feet on the upper side of the far left-hand corner, crashed into an automobile which was parked there with such force that he knocked it into another parked still ahead of it, and caused this other to crash into a third car stil farther up Constance Street. And ·he hit the child with such force that her body was found some distance farther up Constance Street than the point at which the automobile was brought to a stop.

Counsel for defendants calls our attention to the case of Pyaette v. New Orleans Public Service, Inc., 10 La.App. 300, 120 So. 483, in which we stated that a young child approximately four years old runs at a speed of approximately 7 or 8 miles an hour and in which we held the defendant not liable because the young child had run from the sidewalk in front of a street car when it was too late for the motorman to bring the car to a stop. But, in the first place, it takes considerably longer to bring a street car to a stop than it does to stop an automobile, and in that ·case the distance which the child traversed in view of the motorman was much less than the 30 feet which the young Seither girl traversed here.

That the speed of the car was excessive is stated by several witnesses.

Albert Bailly, who lives on Constance Street about 150 or 200 feet below Toledano Street, states that when Poter passed his house the speed of his car was between 40 and 45 miles per hour. He says that Poter "slowed down about 25 or 30 feet before he got to the corner", but added that he "didn't slacken very much".

Defendants attack the testimony of Mr. Bailly on this point, Mr. Poter, Sr., testifying that on the night of the accident, after leaving the police station, he went to a barroom, apparently in the neighbor-

hood, and there met Bailly, who, referring to young Poter, said: "That boy is not in fault; there isn't a man in this God's green earth could avoid the accident". In spite of this testimony of Mr. Poter, we are impressed with the statements made by Mr. Bailly as to the speed of the automobile and not impressed with Mr. Poter's testimony, in which we think he very much exaggerated the statement made by Mr. Bailly in the saloon, if, in fact, any such statement was made.

Mrs. Bailly also saw the car as it approached the corner. She states that she couldn't fix the speed in miles per hour, but that it was "coming by real fast". She says that her attention was attracted by the speed of the car because she felt certain that an accident would happen and adds that "I kept on watching the car and to see if it would get into an accident and it bumped into another car, a parked car, but I didn't see any child running across the street or anything."

Mrs. Rosie Gray, who lived on Constance Street about 20 feet below the intersection, was seated on her front step with a neighbor. She testified as follows:

"A. I saw it about a block away from my house coming very fast, terribly fast, so fast there was no stopping to it.

"Q. Did the automobile slow up at any time before it struck the child? A. Not once."

Poter, who was driving the car, at different points in his testimony fixed his speed at 25 miles per hour and at 20 miles per hour, and, when charged with having made different statements, said that the correct speed was whatever he had said in the statement made just after the occurrence.

It thus appears that the eye-witnesses who state that the speed was excessive greatly predominate, and, in addition, the physical facts, as we have shown, indicate a speed so great that it must have been entirely beyond the power of Poter to stop within a reasonable distance after the emergency manifested itself.

We have been somewhat concerned by the fact that the judge a quo found for the defendants because we recognize the reason for and the force of the rule that the finding of a trial court on a question of fact should not be disturbed on appeal unless it is obviously erroneous. Still, we cannot persuade ourselves here that the record, justifies any conclusion other than that there is such manifest error.

It appears that young Poter has married since the filing of this suit and has, thus, become emancipated by that marriage. There is no doubt that, in spite of the lay impression that a minor cannot be responsible for the results of his torts, the Civil Code recognizes such responsibility and makes the minor liable in addition to the father with whom the minor may be living.

In Lutcher & Moore Cypress Company v. Schexnaydre, 11 La.App. 72, 122 So. 911, we discussed this question and said: "That a minor is responsible for the obligations resulting from his torts cannot be seriously disputed. Article 1874 of our Civil Code provides: 'He (the minor) is not relievable against obligations resulting from offenses or quasi offenses.' Article 2227 of the Civil Code states: 'He is not restituable against the obligations resulting from his offenses or quasi offenses.' Article 1785 of the Civil Code, among other things, provides: 'The obligation arising from an offense or quasi offense, is also binding on the minor.'" See, also, Kern v. Knight, et al., 13 La. App. 194, 127 So. 133.

When we come to consider the amount to be awarded to each of the two bereaved parents, we notice that the suffering of the child must have been of very short duration, for the doctor who treated her testified that she was unconscious from the moment of impact until the time of her death several days later. In fact, the doctor's own words are that there was "very little pain and suffering".

We have considered several other cases in which young children were killed and find that there has been established in this state a figure approximating $2,000 to $2,500 as the loss sustained by each of the parents where both survive.

In Drago v. Dorsey, 13 La.App. 115, 126 So. 724, we allowed to one parent $2,500 for the death of a three-year-old.

In Jacoby v. Gallaher, 12 La.App. 477, 126 So. 86, we allowed to each parent $2,000 for the death of a five-year-old child.

In Ziegler et al. v. Lamantia, 13 La. App. 70, 126 So. 262, we allowed each

parent $2,500 for the death of a twelve-year-old child.

In Bosarge v. Spiess & Company, La. App., 145 So. 21, for the death of a young boy under eleven years we allowed each parent $3,000.

In Rome v. London & Lancashire Indemnity Company of America, La.App., 169 So. 132, we allowed each of the parents of a ten-year-old boy $2,500.

■ In view of the fact that the record rather conclusively shows poverty on the part of the defendants and inability to respond in damages, we feel that we should be influenced by what the Supreme Court said in Jackson v. Briede, 156 La. 573, 100 So. 722, 726: "The court should not impose a penalty in money greater, perhaps, than the defendant can pay." See, also, Gallman v. Young, 6 La.App. 137; Perez-Sandi v. Berges, 12 La.App. 191, 125 So. 185, and Danove v. Mahoney, et al., La.App., 176 So. 404, 406. In the last mentioned case we said: "* * * It is well recognized that the ability of the defendant to respond in damages will be taken into consideration in determining the amount of the judgment."

■ We shall allow to each of the parents for the loss sustained in the death of their daughter $2,000.

Of course, the father is, in addition, entitled to the actual expenses which he has been required to meet, and these, according to the record, total the sum of $398.79.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of Mrs. Florence M. Seither and against James E. Poter, Sr., and James E. Poter, Jr., jointly, severally and in solido, in the full sum of $2,000, with legal interest thereon from judicial demand, and that there be further judgment in favor of Milton W. Seither and against James E. Poter, Sr., and James E. Poter, Jr., jointly, severally and in solido, in the full sum of $2,398.79, with legal interest thereon from judicial demand. Defendants to pay all costs.

Reversed.