FRUGÉ, Judge.
This is a suit for damages sustained by plaintiff in an automobile collision between the passenger automobile in which plaintiff was a guest and a lowboy trailer owner by Flenniken Construction Company and insured by Argonaut Insurance Company. The automobile in which plaintiff was a passenger at the time of the collision was being driven by her minor son, Stanley B. Coleman. Argonaut Insurance Company filed a third party demand against Everett A. Coleman, individually and as administrator of the estate of his minor son, Stanley B. Coleman, alleging that Stanley B. Coleman was guilty of negligence proximately causing the accident, and praying for judgment against Everett A. Coleman for a contribution as a joint tort-feasor in the event judgment was rendered in favor of plaintiff and against Argonaut Insurance Company.
On the trial of the merits before a jury, there was judgment in favor of the plaintiff for $7,800, and by special interrogatories submitted to the jury, the jury determined Flenniken to have been guilty of negligence proximately causing the collision and also found plaintiff’s son, Stanley B. Coleman, guilty of negligence proximately causing the accident. Judgment was also rendered in favor of Argonaut Insurance Company and against. Everett A. Coleman individually and as administrator of the estate of his minor son for contribution of one-half of the $7,800 judgment rendered on the main demand against Argonaut Insurance Company.
From said judgments Argonaut Insurance Company and Everett A. Coleman have perfected this appeal to this court.
At about S :30 A.M. on October 23, 1963, plaintiff Johnnie Ruth Coleman, age 39 and mother of ten children, was a passenger in an automobile owned by her husband, Everett A. Coleman, and operated at the time by her sixteen year old son, Stanley B. Coleman. The automobile was proceeding in a northerly direction on Lake Street in the City of Lake Charles at what plaintiff alleges to be a reasonable speed, when it collided with the rear end of a lowboy trailer with a dolly astride it, that had been disconnected from a 1961 Chevrolet truck *498 which was parked at the east curb of Lake Street.
Plaintiff alleged that the trailer was unusual in design and was parked on a city street approximately two and one-half feet from the curbing without flares, lights, visible reflectors or warning markers, at night, unattended, all of which is relied upon as constituting actionable negligence on the defendant’s insured as being a proximate cause of the collision.
In answer to plaintiff’s allegations, defendants pleaded a general denial and by an amended answer alleged that the plaintiff’s minor son was the sole and proximate cause of the collision- This act of negligence of the plaintiff’s son and on the part of the plaintiff is set forth to be the fact that plaintiff’s minor son was driving without his eyeglasses when his vision was so poor that he could not see objects that a person with normal vision could see and that accordingly his failure to see the truck and trailer, which was parked under or near a street light, before he did was a direct and proximate cause of the accident. It was then alleged that plaintiff, riding as a passenger with her minor son when she knew that his vision was defective without his glasses, assumed the risk and so was barred from recovery.
Before going into possible error of the lower court, a description of the lowboy trailer that Stanley Coleman collided with should be made. The lowboy trailer in question is of the usual heavy duty type of construction, with a flat bed of approximately 35 feet in length. At the time of the collision the lowboy had been disengaged from the tractor and so all electrical warning or stopping signal lights were disconnected and not functioning at such time. The tractor or cab was equipped with headlights, cab lights and rear lights, which were burning, along with two headache bar lights. An examination of photographs identified as Exhibits P-1 (Tr. 112), P-2 (Tr. 113), P-3 (Tr. 116), D-5 (Tr. 130) and D-9 (Tr. 113-A) clearly indicates that the headlights, cab lights and headache bar lights would have only been visible from a frontal approach to the truck. The lowboy and dolly attached thereon, having been disconnected from and placed directly behind the truck, should have been visible only from the light given off by the overhanging street light. The photograph identified as Exhibit “D-ll” (Tr. 135), indicates that the rear lights of the tractor or cab would have been extremely difficult to see by a motorist approaching from the rear.
Defendant and third party plaintiff-appellant’s assignments of error Nos. 1 and 2 are that the jury erred in finding negligence on the part of Flenniken Construction Company or that this negligence was the proximate cause of the collision. Plaintiff’s charges of negligence on the part of Flenniken Construction Company are basically five in number; the failure of Flenniken’s employee to have lights on the lowboy trailer, the failure to put out flares to warn approaching motorists of the stopped truck, the failure to park the truck off the paved portion of the street when it was practical to do so, in violation of Lake Charles City Code, Section 12-70, and, furthermore, in violation of City Code Section 12-9, in not parking the truck and lowboy within the proper distance from the curbing.
The type of construction of the lowboy trailer here involved, (plus the fact that the dolly was astride said lowboy), falls within the classification the courts of this state have established as being of such a peculiar and unusual nature as to remove it from the usual category of vehicles which could and should be easily observed by drivers on the streets and highways of this state. Lovelace v. Gowan, La.App. 2 Cir., 52 So.2d 97; Gaiennie v. Co-operative Produce Co., 196 La. 417, 199 So. 377; Rea v. Dow Motor Co., La.App., 36 So.2d 750; Lynch v. Fisher, La.App., 41 So.2d 692. In addition, on a dark misty night, as it was on the night of the col *499 lision, the presence of the tractor cab in itself should have a tendency to attract the attention of drivers approaching from the rear and thereby distract their attention to such a degree as to prevent their observation of the low height projection of an extremely poorly marked lowboy. (See testimony of Stanley B. Coleman, Tr. 301, 302, 303, 305, 335, 336, 345 and 346.) Another factor mitigating against ready observation of the lowboy was its color, combined with the rear tires of the lowboy and the tires of the dolly astride the lowboy, which on a foggy misty night would tend to camouflage the awaiting parked obstacle.
 As a result of this factual situation, we must agree with the findings of the jury that Flenniken Construction Company was the proximate cause of the collision, and in so deciding this, we must also come to the decision, as did the jury and the lower court, that Stanley B. Coleman, minor son of plaintiff and driver of the vehicle involved in the collision, was also guilty of negligence which was a proximate cause of the collision.
As clearly as the record reflects that Flenniken Construction Company was guilty of negligence by its actions, so too does the record reflect Mrs. Coleman’s minor son, Stanley B. Coleman, was guilty of negligence which was a proximate cause of the collision. The testimony of Stanley B. Coleman (Tr. 322) clearly reflects that he was thoroughly familiar with Lake Street and traveled past the scene of the accident many times at night. He testified on discovery deposition that at the time of the collision he did not have his windshield wipers on, although the atmospheric condition was misty with a fog. At the trial, plaintiff’s son testified he did not notice his speed immediately prior to the accident, whereas on his discovery deposition he testified he was traveling at approximately 40 miles an hour. The city police officer who investigated the accident testified that plaintiff’s son told him that he was traveling at a speed of 45 miles an hour immediately prior to the accident. The record reveals that the maximum speed limit on Lake Street at the scene of the collision was 35 miles per hour
Of possible greater significance than excessive speed prior to the collision is the fact that plaintiff’s son was nearsighted and did not have his glasses on at this time.
It was determined approximately one month before the accident that Stanley B. Coleman had poor vision. He testified that he needed his glasses for driving, that he knew he was nearsighted, and that it was true he had difficulty in seeing objects at a distance. At the time of the trial in the lower court, his driver’s license had a restriction that he was required to wear glasses while driving an automobile. The record does not reveal that at the time of the collision this restriction of driving only with eyeglasses was required since he only had his eyes examined four weeks prior to the accident.
Mr. Ossie Paul Savoie, hearing examiner of the Louisiana Department of Public Safety, testified that the minimum visual acuity requirements were 20/40 in each eye, or 20/40 in one eye if the other eye was blind. A person with 20/70 in each eye would have various restrictions noted on his license, which would include driving in daytime only. A person with 20/100 in each eye would be very highly restricted.
Contained in the record is a stipulation of counsel that Stanley Coleman’s eyesight when he was examined approximately three weeks before the accident by a doctor from Texas State Optical Company, Orange, Texas, was 20/60 in each eye, down to 20/100 in each eye. We must agree with the jury’s finding from a factual standpoint that the record clearly shows that Stanley B. Coleman was driving without his glasses, and driving without his glasses was a contributing cause of his not *500 seeing the unlit lowboy trailer in time to avoid the accident.-
Defendant’s assignment of error No. 3 is that the jury erred in not imputing the negligence of the minor son to the plaintiff in that she assumed the risk by riding with him when his eyesight was so poor that the average person would have known of the danger of driving with one who was so nearsighted.
We find that the record reflects no such error and that the negligence of Stanley B. Coleman cannot be imputed to the plaintiff. Further, the record does not show that defendant has proven that Mrs. Coleman assumed the risk by driving at night with her nearsighted son.
From the record as a whole, it is clear that Mrs. Coleman had not been informed of the precise condition of her son’s eyesight when Stanley Coleman had been examined at the Texas State Optical Company in Orange, Texas. At no time was she familiar with nor did she have actual knowledge of visual deficiency of Stanley Coleman, nor did the doctors, her son, or anyone else fully inform Mrs. Coleman that he was not to operate a vehicle or drive a car without his glasses and that his nearsightedness constituted a clear danger to anyone riding as a guest with him when he did not have his eyeglasses on.
As for the excessive speed, it was Mrs. Coleman’s testimony that her son was not exceeding the speed limit at the time or immediately prior to the accident because of the fact her son had slowed down some 400 yards or two blocks from the site of the collision in order to go around a street barricade on Lake Street.
In Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, our Supreme Court enunciated the principle concerning the imputation of a driver-son’s negligence to his guest passenger-mother:
“Nor can we agree with the theory of the Court of Appeal that the negligence of the son must be imputed to the mother because the mother was vested with the theoretical right of' control of the son’s operation of the car. On the contrary, the negligence of one person cannot be imputed to another person not guilty of personal negligence in the absence of a legal obligation on the part of the latter to respond for the fault of the former.”
More simply, the rule is that in cases of mother and son relationship existing while passengers riding in an automobile does not ipso facto establish as a matter of law any basis for imputing a son’s negligence to his mother under a theoretical right of control. Following the Gaspard case, see above, this court cannot justly conclude that the negligence on the part of her son, Stanley B. Coleman, could be in any way imputed to the plaintiff, nor can we say that Mrs. Coleman assumed the risk in driving with her nearsighted son due to the fact that she did not fully appreciate or have complete understanding of her minor son’s poor eyesight.
Applying the rule of the Gaspard case to this case, the record reveals that Mrs. Coleman had been requested by her son to accompany him and that Mrs. Coleman had not given any instructions to her son as to the route to be taken or the speed to be driven.
The standard of care required of a guest passenger was recently set down by the Supreme Court in the case of Smith v. Marquette Casualty Co., 247 La. 1054, 176 So.2d 133:
“A guest passenger is not required to monitor the operation of an automobile, nor is he required to pay attention to the road and other traffic conditions in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.”
It is our appreciation and understanding of the facts that Mrs. Coleman did not *501 have actual or constructive knowledge that her son was incompetent or unfit to operate the vehicle at the time of the collision.
Defendant’s fourth assignment of error committed by the lower court was that the jury’s award of $7,800 was an abuse of its discretion and should be lowered.
Immediately following the accident Mrs. Coleman was taken to St. Patrick’s Hospital and there hospitalized for a period of eleven days, being treated at this time by her family physician, Dr. Fritz LaCour. Examination revealed that Mrs. Coleman had sustained severe deep lacerations about the face, head, temple and left cheek, in addition to a severe four-inch laceration across her forehead. Mrs. Coleman complained at this time of considerable pain and discomfort through her chest, right hip and right thigh and a subsequent examination proved the existence of severe contusions to these areas. Her treatment, prescribed while in the hospital, was supportive measures, muscle relaxant agents, oral medication and medication by injection for the pain in the hip, plus a special bed and special mattress. After release from the hospital, Mrs. Coleman returned home and remained in bed for three weeks. The severe four-inch laceration across Mrs. Coleman’s forehead left permanent scarring. At the time of the trial Mrs. Coleman still complained of pain, of weakness in her right thigh, discomfort in her back, and muscle spasms. Dr. LaCour testified that he doubted if Mrs. Coleman would recover from these various pains and complaints caused by the accident before the passing of another year from the date of the trial (Tr. 486).
Dr. Robert O. Emmett, testifying for the defendant, stated that Mrs. .Coleman’s four-inch scar on her forehead was still visible at a distance of 18 feet (Tr. 634).
Dr. J. W. Ambrister, another witness for the defendant, testified that in his examination of Mrs. Coleman he found pain still in her right shoulder, pain in the region of the right elbow, pain in the right arm when extended, plus moderate tenderness overlying the region of the lower back area (Tr. 623-625).
Considering the permanent disfigurement and the pain and suffering suffered by plaintiff, we find no error in the quantum awarded by the jury.
As stated in the first part of this opinion, on October 15, 1964, Argonaut Insurance Company filed a third party demand against Everett A. Coleman individually and as administrator of the estate of his minor son, Stanley B. Coleman, alleging that Stanley B. Coleman was guilty of negligence proximately causing the accident (which we so ruled that he was) and praying for judgment against Everett A. Coleman for contribution as a joint tortfeasor in the event judgment was rendered on the main demand in favor of Mrs. Coleman and against Argonaut Insurance Company (which it was).
Prior to the filing of the third party demand of Argonaut Insurance Company, Everett A. Coleman filed on September 14, 1964, in the U. S. District Court, Western District of Louisiana, a voluntary petition in bankruptcy. The bankruptcy petition and schedules did not list any claims of Flenniken Construction Company or Argonaut Insurance Company arising out of the accident of October 23, 1963, either for damages or for contribution from Everett A. Coleman, nor were the bankruptcy petition and schedules amended to list any such claims.
The verdict was returned in favor of the plaintiff, Mrs. Coleman, and by the special interrogatories submitted to the jury, the jury determined that Stanley B. Coleman was guilty of negligence proximately causing the accident. Judgment was then rendered by the court in favor.of the third party defendant, Everett A. Coleman, and against the third party plaintiff, Argonaut Insurance Company, maintaining the exception of no right or cause of action based on his discharge in bankruptcy. A formal *502 judgment was read and signed in accordance with the jury’s verdict and the court’s judgment on the exception of no right or cause of action on October 28, 1965, and Argonaut Insurance Company moved for a new trial concerning the court’s maintaining said exception.
On June 25, 1965, Everett A. Coleman filed an exception of no right of action to the third party demand of Argonaut Insurance Company, again pleading that Argonaut’s claim had been discharged in bankruptcy.
A new trial was granted and on November 8, 1965, the court rendered judgment in favor of the third party plaintiff, Argonaut Insurance Company, against third party defendant, Everett A. Coleman as administrator of the estate of his minor son. Thus, the exception of no right of action filed by Everett A. Coleman individually was maintained due to his discharge in bankruptcy. However, the exception of no right or cause of action of Everett A. Coleman as administrator of the estate of his minor son for contribution of one-half of the original judgment of $7,800 was rejected and judgment was rendered in favor of Argonaut Insurance Company.
The bankrupt Everett A. Coleman now argues before this court that Argonaut Insurance Company cannot enforce contribution from him after his discharge in bankruptcy because Argonaut Insurance Company was not listed in the schedule of creditors in the bankruptcy proceedings although they had actual knowledge of such proceedings within the time limits provided by the Bankruptcy Act to oppose his discharge or to move to have its claim listed in the bankruptcy petition.
This contention is without merit for the bankruptcy proceedings and subsequent discharge in bankruptcy of Everett A. Coleman discharged all of his debts but did not discharge the debt against the estate of his minor son, Stanley B. Coleman. As the lower court ruled on the new trial, Everett A. Coleman is not individually liable for contribution on the main demand for contribution of one-half of the $7,800. However, as administrator of his minor son’s estate, he is so liable. This is a debt owed not by Everett A. Coleman individually but a debt owed by the estate of his minor son, whose negligence has been found to be a proximate cause of collision. As this court said in Redd v. Bohannon, La.App. 3 Cir., 166 So.2d 362:
“Although the parent or tutor of an un-emancipated minor is also liable for the minor’s torts, the minor likewise remains personally liable for the damages sustained thereby — minority is not a defense against the minor’s own liability for damages caused by his negligence. LSA-Civil Code Arts. 1785 (par. 5), 1874, and' 2227; Martin v. Sanders, La.App. 1 Cir., 163 So.2d 923; Smith v. Freeman, La.App. 2 Cir., 31 So.2d 524; Seither v. Poter, La.App.Orl., 194 So. 467; Kern v. Knight, 1 Cir., 13 La.App. 194, 127 So. 133. As the cited cases show, obligations arising from a tort committed by a minor are enforceable against the minor the same as though he had attained’ majority.”
But since an unemancipated minor does nofr have the procedural capacity to sue or be-sued, the minor can be made a party to-the suit through his parent or tutor. LSA-C.C.P. Arts. 683, 732. LSA-C.C.P. Art-732 provides:
* * * * * *
“The father, as administrator of the estate . of his minor child, is the proper-defendant in an action to enforce an-obligation against an unemancipated minor who is the legitimate issue of living-parents who are not divorced or judicially separated.”
***** *
Since Everett A. Coleman was not individually liable but only liable as administrator, the judgment is manifestly correct
*503 For the foregoing reasons, the judgment of the district court rendered on November 10, 1965, maintaining the exception of no cause of action of Everett A. Coleman to the third party petition of Argonaut Insurance Company, based on his discharge in bankruptcy, is affirmed. The judgment award of $7,800.00 to plaintiff, and the district court’s ruling in favor of Argonaut Insurance Company and against Everett A. Coleman as administrator of the estate of his minor son, for one-half of the amount awarded plaintiff is also hereby affirmed. Costs of appeal are to be paid by Argonaut Insurance Company.
Affirmed.