Emerson **JOHNSON, individually and for and on behalf of his minor children, Burnadine Johnson, Cassandra Johnson and Charles Johnson, and Dianne Tonth, Plaintiffs-Appellants,**

v.

**FORD MOTOR COMPANY, Defendant-Appellee.**

No. 81–3635.

United States Court of Appeals, Fifth Circuit.

June 16, 1983.

Rehearing Denied Aug. 5, 1983.

Darleen M. Jacobs, New Orleans, La., for plaintiffs-appellants.

McGlinchey, Stafford, Mintz & Hoffman, Dermot S. McGlinchey, Ernest P. Gieger, Jr., Mark E. Hauck, New Orleans, La., for defendant-appellee.

Before GARZA, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

This appeal poses two questions: (1) does the settlement and release of claims against the defendants in a state court action, which is silent as to the defendant in a federal court action, in matters arising out of the same accident, automatically release the defendant in the federal court proceeding, and (2) is the answer the same if minors are involved? Applying Louisiana law we answer the questions "yes" and "no," respectively, and affirm in part, reverse in part and remand.

### Facts and Procedural Background

On July 15, 1978, Emerson Johnson's 1972 Mercury Cougar was involved in an accident in New Orleans. Johnson's wife Dorothy was driving, accompanied by their three minor children, Burnadine, Cassandra and Charles, and by Nakii Tonth, the minor daughter of Dianne Tonth. The Johnson vehicle was struck from the rear by an auto owned and driven by Andrew Kelly. After the collision, the gas tank of the Cougar exploded, engulfing the car with fire. Nakii Tonth was killed. The Johnsons survived but were severely injured.

Acting individually and on behalf of his three minor children, Emerson Johnson filed suit in state court against Kelly and various liability insurers. Dianne Tonth joined as a plaintiff. Thereafter, invoking diversity jurisdiction, Emerson Johnson, again acting individually and on behalf of the minors, and Dianne Tonth, filed suit in federal court against Ford Motor Company, alleging a defect in the Cougar which caused the explosion and fire.

The state court action was settled and, in due course, Johnson executed releases for himself and, pursuant to court approval, on behalf of the minors. Dianne Tonth also settled her claim, and the state court action was dismissed. The releases made no reference to Ford Motor Company or to the pending federal action. Ford sought and the district court granted summary judgment dismissing the complaint on the ground that the release of the state court defendants, without an express reservation of rights against Ford, automatically released Ford.

### Joint Tortfeasors

Johnson first assigns error to the court's conclusion that Ford and Kelly would be liable *in solido* as joint tortfeasors under Louisiana law. His theory of the case charges Ford with a tortious act separate from that of Kelly by dividing the accident into (1) Kelly's collision, and (2) an explosion and fire stemming from Ford's defective design. In Johnson's view, Andrew Kelly "caused" the collision, but Ford "caused" the explosion, and these separate torts make the defendants separately liable.

We decline the invitation to walk into this causation quagmire since the distinction Johnson urges has not been found persuasive by federal and state courts considering the issue. In our recent decision in *Joiner v. Diamond M Drilling Co.,* 688 F.2d 256 (5th Cir.1982), we rejected the contention that no solidarity could be found among tortfeasors where the remedy available from each was different. "Now the rule is that '[an] obligation may be in solido *even though the obligations of the obligors arise from separate acts or by different reasons.'* " *Id.* at 263 (emphasis in original) (*quoting Hoefly v. G.E.I.C.O.,* 418 So.2d 575, 579 (La.1982)).[1] Although liability *in solido* usually occurs when tortfeasors cooperate in a mutual effort to cause harm, "[i]t can also be imposed upon persons who are strangers to each other but who have each contributed to bringing about the same wrong, as in the case of concurrently yet

---

1. The principle of solidary obligation, making each person involved in a wrongful act liable to the party injured for all damages suffered, finds its expression in La.Civ.Code art. 2324, which provides in part:

    He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.

    Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido. . . .

independently negligent actors." *Equilease Corp. v. Smith International, Inc.,* 588 F.2d 919, 923 (5th Cir.1979) (footnote omitted). *See also Carter v. Epsco, Inc.,* 681 F.2d 1062 (5th Cir.1982).

The Louisiana courts also uniformly apply solidarity for separate but joint tortfeasors. *E.g., Billeaudeau v. Lemoine,* 386 So.2d 1359 (La.1980); *Guarisco v. Pennsylvania Casualty Co.,* 209 La. 435, 24 So.2d 678 (1945). Guidance is even more specific in *Murphy v. Central Louisiana Electric Co.,* 261 So.2d 694 (La.App.1972), in which the court found joint liability and causation where one defendant negligently backed into a gas meter which had been negligently located in a dangerous position by another defendant, the gas company. Both negligent acts contributed to the explosion. Both defendants were found jointly liable.

We cannot make a principled distinction between the theory advanced by Johnson and the theories of causation and intervening negligence rejected in *Murphy.* The district court properly applied Louisiana law and found Ford to be a solidary obligor with Andrew Kelly.

■ Moreover, this is not a case where the evidence is insufficient to establish as a matter of law the released party's negligence. *Cf. Reed v. Rheem Manufacturing Co.,* 364 F.2d 810, 811 (5th Cir.1966) (reversing summary judgment on release agreement since "the release of one of several *alleged* joint tort-feasors who is not *in fact* at fault does not release the others, because there can be no joint liability between them") (emphasis in original; footnote omitted). Johnson has urged Kelly's negligence in state and federal court and has consistently alleged facts sufficient to establish Kelly's status as a joint tortfeasor. Under Louisiana law, for purposes of responsibility to persons injured or suffering losses in this action, Kelly and Ford are joint tortfeasors, liable *in solido.*

### The Releases

Johnson next maintains that despite the joint tortfeasor relationship, the execution of the agreements releasing Kelly and his liability insurer did not automatically release Ford. This thesis is not supported by the Louisiana Civil Code or by controlling Louisiana jurisprudence. Indeed, the law overwhelms to the contrary.

■ Relying on the principle, basic to Louisiana law, that a solidary obligation is only one debt so that there can be only one satisfaction of it, "the Louisiana courts have consistently held that a release of one joint tort-feasor with no express reservation of rights discharges all joint tort-feasors." *Reed v. Rheem Manufacturing Co.,* 364 F.2d at 811 (footnote omitted). This rubric is an application of article 2203 of the Louisiana Civil Code, which provides in part: "The remission or conventional discharge in favor of one of the codebtors *in solido,* discharges all the others, unless the creditor has expressly reserved his right against the latter." This provision has been a part of Louisiana's positive law since prior to statehood.

The releases compromising the state court claims contained no explicit reservation of rights against Ford. Indeed, there was no mention of claims against Ford or the pending federal court litigation. The release agreement acknowledged receipt of consideration and authorized:

> Release and discharge [of] Andrew Kelly and [his insurer] and each and all of them, and anyone for whom any of them is or might be responsible, from any and all liability for personal injuries, medical expenses or other expenses of whatever nature or kind, claims, other demands, actions or causes of actions, suits at law and equity because of any matter or thing done by the said Andrew Kelly and/or [his insurer] or either of them or anyone for whom they are or may be responsible ... all as is more fully declared upon in the suit bearing the number 78–12343 on the docket of the Civil District Court for the Parish of Orleans. . . .[2]

2. The releases executed by Dianne Tonth and

Emerson Johnson, in the form of a standard-

Johnson insists that the specific and singular references to Kelly, his insurer, and the state court action, indicate that the releases were to be limited to the state court defendants. However, Louisiana law does not permit this post-release gloss. This interpretation is inconsistent with the express language of Civil Code article 2203, its underlying principle, and interpretative jurisprudence. *See, e.g., Billeaudeau v. Lemoine; Guarisco v. Pennsylvania Casualty Co.; Reid v. Lowden,* 192 La. 811, 189 So. 286 (1939).

■ Johnson argues that he had no intent to release Ford. Our review of the jurisprudence leads us to the conclusion that a party's intent, although relevant and helpful in the interpretation of a release, may not substitute for the obligatory express reservation. *See Moak v. American Automobile Ins. Co.,* 134 So.2d 911 (La. 1961). Johnson relies on *Wise v. Prescott,* 142 So.2d 613 (La.App.1962), which noted that article 2203 "makes no provision for any specific form of reservation. It has been held that there is nothing sacramental about the form ... it suffices that the intention to reserve a right against codebtors may be inferred from any expression in the release which negatives the intention to release them." *Id.* at 617. The release agreement in that case stipulated that it would "forever discharge the Allstate Ins. Co. & Vester Prescott *only.*" *Id.* (emphasis the court's). While the court in *Wise v. Prescott* considered the intent of the parties, the reservation was still found to be "express" since the plaintiff's intent was manifested in the language of the release.

■ The releases before us do not permit that interpretation. At oral argument Johnson's counsel argued convincingly that the releases were not intended to extinguish the claims against Ford and that counsel erred in not including more limiting

language in the instruments. We accept this. Nevertheless, because Kelly and Ford are joint tortfeasors, the release of Kelly, without more, by operation of law released Ford. As a consequence, the claims of the adult plaintiffs against Ford are extinguished.

### The Minors' Claims

The situation presented by the minors differs. We are confronted with codical provisions which, at first glance, appear on a collision course but which, on closer analysis, are found compatible. The Louisiana Code of Civil Procedure carefully details the manner in which the claims of a minor may be compromised and settled. An integral part of any valid settlement is specific court approval.

■ An unemancipated minor has no legal capacity; he may neither enforce nor relinquish rights and may only act through his parents, if both are alive and not legally separated or divorced, or through a court-designated tutor or tutrix. La.Code Civ. Proc. arts. 683, 732; *Coleman v. Argonaut Insurance Co.,* 187 So.2d 495 (La.App.1966). The father, as administrator of the minor's property, may take steps affecting the child's interest, including the compromise of a legal claim, "in the same manner and by pursuing the same forms as in the case of a minor represented by a tutor, the father occupying the place of and having the powers of a tutor." La.Code Civ.Proc. art. 4501. The parental administrator remains accountable for the child's estate. La.Civ. Code art. 221.

Article 4501 was intended by the Louisiana legislature to impose upon parental administrators the obligations and duties of legally-appointed tutors, including the requirement under La.Code Civ.Proc. art. 4271 that court approval be sought for actions affecting the minor's interest.[3] Arti-

---

ized "receipt and release" which were filled in, are worded slightly differently from the releases for the other plaintiffs, as quoted above, but the differences in wording play no part in the analysis involved in this appeal.

3. *See* Oppenheim, *The Basic Elements of Tutorship in Louisiana,* 44 Tul.L.Rev. 452, 458 (1970). Of course, the parental administrator differs from the tutor in many ways, *see generally id.* at 454–58, not important to the obligation involved in this case.

cle 4265 sets out the requirement of judicial oversight where release agreements are involved:

> With the approval of the court as provided in Article 4271, a tutor may compromise an action or right of action by or against the minor, or extend, renew, or in any way modify the terms of an obligation owed by or to the minor.

See *LaPorte v. Clesi, Inc.,* 197 So.2d 419 (La.App.1967). Article 4271 specifies the contents of the petition and the manner in which the matter is to be presented to the court for decision.[4]

■ For adults functioning on behalf of minors there remains a continuing duty to act in the best interests of the child—"as a prudent administrator," La.Code Civ.Proc. art. 4262—and to seek and obtain prior court approval under article 4271 before compromising those interests. Compromises entered into absent these protections are of no legal effect. *See Gaspard v. Liberty Mutual Ins. Co.,* 243 So.2d 839 (La.App.), *writ denied,* 258 La. 357, 246 So.2d 680 (1971). As Professor Oppenheim observed: "The courts of Louisiana have been most protective of the minor's interest in the area surrounding settlement of claims, and have not hesitated to nullify any settlement or compromise that was not judicially approved." Oppenheim, *supra* note 3, at 493.

Because "it is the general policy of our law to protect all minors from the possible consequences of immaturity," *State in Interest of Dino,* 359 So.2d 586, 593 (La.1978) (footnote omitted), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), the tutorship arrangement is not in itself sufficient protection of the unemancipated minor's interests. The Louisiana courts must, under article 4271, maintain a careful oversight of the interests of the minors brought before them by parents or tutors. The courts' responsibility has greatly expanded in the last half-century, both in terms of the list of protected interests and the keener judicial eye required. This increased judicial scrutiny developed from the decline of the "family meeting" device, leaving the courts as the final preventative from unrestrained and unwise compromise of the minor's interests. *See* Oppenheim, *supra* note 3, at 456–58, 489–91; Comment, *The Family Meeting and its Successor in Louisiana,* 25 Tul.L.Rev. 237 (1951). The courts' role has evolved from a mere rubberstamp to an affirmative obligation:

> It is the duty of the court to substitute its own judgment for that of the natural tutor under Article 4261 where it is apparent the request of the tutor is not a prudent act of administration of the minors' property.

*Tutorship of Vines,* 331 So.2d 894, 896 (La. App.1976).

Although the duty incumbent upon courts to keep a watchful eye over the interests of minors has gained its broadest expansion in recent times, the Louisiana courts have long been reluctant to accept the extinction of minors' substantive and procedural claims by default or waiver. *See, e.g., Saenger Amusement Co., Inc. v. Masur,* 158 La. 745, 104 So. 701 (1925) (failure to object held irrelevant to court's finding that evidence was inadmissible and no other evidence supported judgment); *Jacobs v. Kansas City, S & G Ry. Co.,* 134 La. 389, 64 So. 150 (1913) (holding that tutor had no authority to waive citation and reversing judgment based on waiver as a complete nullity, subject to collateral attack). In *Succession of Walsh,* 15 La.App. 332, 131 So. 214, 216 (La.App.1930), the court noted:

> All objections which ought to be made must be considered as having been made.

---

4. Article 4271 of the Code of Civil Procedure prescribes:

> The tutor shall file a petition setting forth the subject matter to be determined affecting the minor's interest, with his recommendations and the reasons therefor, and with a written concurrence by the undertutor. If the court approves the recommendations, it shall render a judgment of homologation. The court may require evidence prior to approving the recommendations.
>
> If the undertutor fails to concur in the tutor's recommendations, the tutor shall proceed by contradictory motion against him. After such hearing and evidence as the court may require, the court shall decide the issues summarily and render judgment.

The minor in such a case is the special ward of the court, and his rights will not be permitted to be prejudiced by the failure of his appointed representative to alertly guard his interests.[5]

Against this background it is apparent that a minor's rights may not be relinquished except pursuant to a specific authorization from a court of competent jurisdiction. It is incumbent upon the court from which the authority to compromise a minor's claim is sought, and any court called upon to give effect to that compromise, to take pains to assure that the minor's interest is well served. The minor's best interest is presumed to be at the core of any such action by any court asked to rule on a matter affecting the minor's personal or property interests.

When the court authorized Johnson to execute the receipts and releases on behalf of his minor children, the authority only extended to the parties named. The court could only approve and homologate that which was requested. The court's authorization must be so understood; the concomitant release must be so interpreted.[6]

The releases are silent as to Ford. The release of Kelly by an adult, without a reservation of rights, releases Ford by operation of Civil Code article 2203 because the adult had the power to release Ford. But the person acting on behalf of a minor has only the authority specifically granted by the court. In the case at bar, the court did not authorize the release of the minors' claims against Ford. Had Johnson attempted to release Ford, the act would have been null and void. Necessarily, that which cannot be done validly in an explicit manner cannot gain validity by being deemed implicit in an otherwise valid act. A minor's representative may not be deemed to release tacitly that which he could not release expressly.

The dismissal of Dianne Tonth's claim and the individual claim of Emerson Johnson is AFFIRMED. The dismissal of the action of Emerson Johnson for and on behalf of Burnadine Johnson, Cassandra Johnson and Charles Johnson is REVERSED and REMANDED FOR FURTHER PROCEEDINGS.

---

**5.** Although some of the cases disallowing waiver of procedural and substantive rights involve curators, rather than tutors, the Louisiana Supreme Court has expressly declined to distinguish the two relationships in the waiver situation but has, instead, applied the rule to both relationships. *E.g., Jacobs,* 64 So. at 151 ("There is no real difference in the duties of a tutor ad hoc and a curator ad hoc. The responsibilities and about the same rules apply to both.") Likewise, the legislature has recently provided that "the relationship between an interdict and his curator is the same as that between a minor and his tutor," La.Code Civ. Proc. art. 4554, in applying the protections of article 4172 to the curatorship relationship. Thus, "[t]he law does not permit a curator to waive anything," *Saenger Amusement Co.,* 104 So. at 703, and this rule-of-thumb must guide a court as well in reviewing substantial prejudice to the minor's interest by his tutor and the authorizing court.

**6.** The minors' releases were the standard forms—authorizing compromise and petitioning for court approval and appointment of undertutor *ad hoc*—normally used when the father is administrator under a current marriage. Although the record before us is not developed on the subject, it is likely that Emerson Johnson's proper role at this time was that of natural tutor, due to the death of his wife Dorothy. *See* La.Civ.Code art. 246; *Travelers Indem. Co. v. Bengtson,* 231 F.2d 263 (5th Cir.1956). We need not base our scrutiny of the effect to be given the minors' releases on any defect in their form or the procedure used to approve them. The obligations of tutor and administrator regarding compromises are sufficiently similar and impose upon the court an equal duty under the facts of this case.