# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1034

BASIL FISHER

VERSUS

CATAHOULA PARISH POLICE JURY, ET AL.

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 26,826 "A"
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**Cooks, Judge, dissents and assigns written reasons.**

**AFFIRMED.**

**Brandon Ashley Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    Catahoula Parish Police Jury

**Timothy R. Richardson**
**Usry, Weeks & Matthews**
**1615 Poydras St., Suite 1250**
**New Orleans, LA 70112**
**(504) 592-4600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Catahoula Parish Sheriff**

**David Michael Williams**
**Attorney at Law**
**620 Murray Street**
**Alexandria, LA 71301**
**(318) 442-6240**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Basil Fisher**

**Paul A. Lemke, III**
**Owens & Lemke, Inc.**
**P. O. Box 595**
**Harrisonburg, LA 71340**
**(318) 744-5431**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Basil Fisher**

**GREMILLION, Judge.**

In this tort action, Basil Fisher appeals the summary judgment granted to the Catahoula Parish Police Jury (the police jury) that dismissed his action. For the reasons that follow, we affirm.

## FACTS

Mr. Fisher's Petition for Damages alleges that he was injured on February 1, 2011. He was incarcerated at the Catahoula Parish jail, located in the Catahoula Parish Courthouse. The courthouse was heated by a gas-fired furnace, which Mr. Fisher alleged was old and had been poorly maintained. As a trusty, Mr. Fisher was charged with keeping the furnace lit and operating. He and another trusty, Mr. Marcus McCarthy, were attempting to relight the pilot light, which kept blowing out due to "faulty equipment and drafts in the building." On the date of the incident, Mr. Fisher was lighting the pilot on the furnace as he had many times before, when a jet of flame shot up from an area above the pilot. The gas exploded, allegedly causing Mr. Fisher injury. He sued the Catahoula Parish Police Jury, owner and custodian of the courthouse; the Catahoula Parish Sheriff, James Kelly, which he incorrectly named as the "Catahoula Parish Sheriff's Office"; the State of Louisiana, through the Department of Public Safety and Corrections; and Peerless Heater Company.

The police jury answered denying the allegations. It thereafter filed a Motion for Summary Judgment in which it maintained that it had no notice of any defect in the furnace in question; accordingly, by virtue of La.R.S. 9:2800, it was not liable, and that, pursuant to the terms of La.R.S. 15:708(H), inmates participating in an inmate labor program are denied a cause of action for injuries received in the course of participation in such programs absent a showing of

intentional or grossly negligent conduct on the part of the sheriff or parish. The police jury supported its motion with the depositions of Mr. Fisher and Mr. McCarthy, and the affidavit of Ms. Patti Mizell, the police jury's Secretary-Treasurer.

Mr. Fisher opposed the motion with his own affidavit; the affidavit of Mr. McCarthy; a report from the Catahoula Parish Sheriff; a service report from a technician from ACA; the report of the Harrisonburg Volunteer Fire Department; the deposition of Ms. Mizell; the deposition of Ms. Libby Ford, President of the Catahoula Parish Police Jury; the deposition of Catahoula Parish Sheriff James Kelly; and the deposition of Mr. Lloyd Montpelier, Warden of the Catahoula Parish jail.

The trial court granted summary judgment in favor of the police jury and the sheriff. Mr. Fisher only appealed the judgment in favor of the police jury.

## ASSIGNMENTS OF ERROR

Mr. Fisher's assignments of error read as follows:

> Trial court erred in granting the motion for summary judgment by the police jury defendant finding that the police jury was immune from suit pursuant to La R.S. 15:507.

> Trial court erred in granting the motion for summary judgment by the police jury defendant finding that there was no proof of a defect in the furnace that exploded nor that the police jury had notice of the defect as mandated by La R.S. 9:2800.

## ANALYSIS

> Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary

2

judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie,* 98–2821 (La.9/8/99), 744 So.2d 606.

*Berard v. Home State County Mut. Ins. Co.,* 2011-1372, p. 2 (La. App. 3 Cir. 5/9/12), 89 So. 3d 470, 471-72.

As a general rule, a public entity is liable for damages caused by the conditions of buildings within its custody and control, but proof of actual or constructive notice of the particular vice or defect that caused injury is required to maintain a cause of action. La.R.S. 9:2800. Louisiana Revised Statutes 9:2800(A) provides, "A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody." Louisiana Civil Code article 2317, in turn, provides, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." Among those modifications is La.Civ.Code art 2317.1, which governs liability for ruin, vice, and defect of things within one's custody, and which requires proof of actual or constructive notice. This interpretation of La.R.S. 9:2800(A) is bolstered by another "modification" of La.Civ.Code art. 2317, found in La.Civ.Code art. 2322, which reads (emphasis added):

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. *However, he is answerable for damages only upon a showing that he knew or, in the*

*exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.* Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

A public entity is deemed to have constructive notice if the defect existed for such a period of time that it should reasonably have discovered it. *Jagneaux v. Lafayette City-Parish Consol. Gov't Parks and Recreation*, 13-768 (La.App. 3 Cir. 12/11/13), 128 So.3d 681.

Mr. Fisher testified that he had no knowledge of any complaints about the heater before the February 1, 2011 incident, and he has no reason to believe that the police jury had knowledge that the furnace would malfunction. He had performed the same procedure for lighting the furnace several times before and experienced no problem.

Mr. McCarthy had no previous experience lighting the pilot. He has no knowledge of any previous problems with the furnace, other than a statement by Ms. Mizell that the pilot blows out when a set of double doors in the area are opened. He attempted to light the pilot first, by igniting a piece of newspaper and holding it near the pilot. When that did not work, Mr. Fisher told Mr. McCarthy that he would try. The explosion followed Mr. Fisher's attempt to light the pilot.

Ms. Mizell's affidavit indicates that as the secretary-treasurer of the police jury, she was not aware of any problems with the furnace. She had never received any complaints about the furnace. The furnace was regularly inspected before this incident, with no problems noted.

These exhibits to the police jury's motion establish an absence of material fact regarding two elements of Mr. Fisher's case: proof of a vice or defect and

4

actual or constructive notice. By the terms of La.Code Civ.P. art. 966(C)(2), the burden of producing evidence sufficient to establish that he would be able to satisfy his burden of proof at trial shifted to Mr. Fisher.

The trial court found that Mr. Fisher failed to prove the existence of a vice or defect that posed an unreasonable risk of harm, that Mr. Fisher failed to demonstrate that the police jury had actual or constructive notice of any defect, and that the police jury was immune to liability pursuant to La.R.S. 15:708.

All that is necessary to affirm the trial court's judgment is the absence of factual support for one essential element of Mr. Fisher's claim. Actual or constructive notice of a defect is conspicuously absent from this case. Mr. Fisher has utterly failed to point out any factual support for the proposition that any defect in the furnace existed for any length of time. All Mr. Fisher has argued is that he was instructed to engage in lighting the boiler, which he claims is an ultra-hazardous activity. Thus, he argues, the police jury should not be immune under La.R.S. 15:708, because instructing him to light the furnace amounted to gross negligence.

The problem with this argument is that it ignores the most fundamental issue in the case, the police jury's liability for the alleged defect. Without liability, there is no need to invoke immunity from that liability. And Mr. Fisher has failed to cross that threshold. In an attempt to cross the threshold, Mr. Fisher has argued that we should apply the doctrine of *res ipsa loquitur*. We decline to apply the doctrine.

The doctrine of *res ipsa loquitur* is intended to allow a plaintiff to rely on circumstantial evidence to create an inference of negligence on the part of the defendant. *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654

5

(La.1989). In light of ordinary experience, the event must be of such a nature that it could only have resulted from someone's negligence. *Id.* "[T]he plaintiff does not have to eliminate all other causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence." *Id*. at 666.

The doctrine of *res ipsa loquitur*, though, only addresses the issue of standard of conduct by a defendant. It fails to address the issue of actual or constructive notice. This cannot be presumed, except as La.R.S. 9:2800 allows; that is, knowledge or notice is presumed if the defect has existed for such a period of time that the police jury should reasonably have discovered it.

Mr. Fisher further argues that his submissions, particularly his affidavit, that of Mr. McCarthy, the report of ACA and that of the Harrisonburg Volunteer Fire Department. The ACA report states, under a section entitled "Notes about the Fire," "Someone attempting to re-ignite the furnace. Gas must have built up in the furnace and ignited causing an explosion and damage to the furnace."

The ACA report, in describing the "Repair Procedure," states:

> Arrived and meet [sic] w/ personnel and cut gas off to boiler. Than had city to turn off gas on [sic] to building. Made certain gas off to boiler and then restarted water heater. Possible reason is pilot was out and valve was stuck open. This caused boiler chamber to fill with gas, causing it to explode when tried to relite [sic].

These two reports, Mr. Fisher argues, created a genuine issue of material fact regarding the existence of a defect in the boiler. These two exhibits pose a difficulty for the court.

Louisiana Code of Civil Procedure article 966(B)(2) provides, in pertinent part (Emphasis added):

6

> The judgment sought shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any*, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

It has long been recognized that unsworn and unverified documents do not warrant consideration in determining a motion for summary judgment, because they do not constitute admissible evidence. *Swido v. Lafayette Ins. Co.*, 04-1674, La.App. 3 Cir. 11/2/15), 916 So.2d 399, *writ denied*, 05-2509 (La. 3/31/06), 925 So.2d 1261.

However, 2013 La. Acts No. 391 amended La.Code Civ. P. art. 966(F)(2) and (3) to provide that evidence attached to a motion for summary judgment or memorandum in support or opposing such a motion "is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection[.]" Such objections must be raised in a memorandum or motion to strike. That act did not amend Subsection (B)(2). This conflict within article 966 raises the question of whether these two exhibits should be considered at all; clearly, before Act 391, they would not have been.

The affidavits of Mr. Fisher and Mr. McCarthy pose a similar issue. In their affidavits, the two men stated, ""Two weeks after the explosion an insurance company adjuster came to the courthouse and I did a walkthrough with him to show and explain what happened. He inspected the furnace and said a big valve on the furnace was leaking and the emergency switch was not working." Louisiana Code of Civil Procedure article 667(A) provides that supporting and opposing affidavits must be based upon personal knowledge and demonstrate that the affiant is competent to testify on the matters stated therein. The statement of an insurance adjuster repeated by Mr. Fisher and Mr. McCarthy constitutes hearsay and is not based upon personal knowledge. Further, opinions on the facts must be expressed

7

in accordance with La.CodeEvid. art. 702 governing expert testimony. La.Code Civ.P. art. 967(A). The insurance adjuster is not even named, much less shown to be qualified to express such opinions.

While these questions create an interesting intellectual exercise for the civilian scholar, they are of no moment in the present case. It was incumbent upon Mr. Fisher to produce evidence that the police jury knew of a defect or that the defect existed for such a period of time that the police jury should have known of it. No such evidence was submitted.

## CONCLUSION

There is no proof that the Catahoula Police Jury knew or should have known of any alleged defect in the furnace prior to the incident of February 1, 2011. Accordingly, the judgment of the trial court dismissing the demand of Basil Fisher against the Catahoula Parish Police Jury is affirmed. All costs of this appeal are taxed to Plaintiff/ Appellant, Basil Fisher.

**AFFIRMED.**

BASIL FISHER

VERSUS

CATAHOULA PARISH POLICE JURY, ET AL.

**Cooks, J., dissents.**

Fisher alleges he was seriously injured when the boiler, also referred to as a gas-fired furnace, in the Catahoula Parish Courthouse exploded while he was attempting to light the pilot. The boiler was over thirty years old. Fisher worked for the Police Jury as a Trustee provided by Catahoula Parish Sheriff James Kelly (Sheriff Kelly). He performed daily maintenance at the Catahoula Parish Courthouse under the direction of the Police Jury's representative, Ms. Patti Mizzell (Mizzell). Fisher was incarcerated in the Catahoula Parish Jail located in the basement level of the Courthouse just outside the boiler room. He is serving time in the custody of the Department of Corrections for drug offenses and is scheduled to be released in 2017, at which time he plans to return to New Orleans to care for his aging parents. Fisher suffered severe and disabling injuries, including loss of hearing and eyesight, as well as burns, resulting from the explosion.

The Catahoula Parish Police Jury is charged by statute with the custody, care and control of the Courthouse building and is statutorily responsible for maintaining the building and its component parts in a "sufficient" state. La. R.S. 33:4713 provides in pertinent part: "Each Parish **shall** provide and bear the expense of a suitable building...and **shall** provide the necessary heat and illumination therefor." Additionally, La. R.S. 33:4715 provides "[t]he police jury

1

of each parish **shall** provide a good and sufficient court-house…and a good and sufficient jail….”

Both the Sheriff and Ms. Mizzel admitted the Police Jury could not afford to hire a regular custodian/janitor for the building. The Police Jury chose to release the maintenance workers it had on staff for many years. Ms. Ford, the Jury's President, approached the Sheriff and requested he allow the Parish to secure the services of several trustees in the work release program to perform the needed labor. Fisher, along with other inmate trustees, consented to work the special Courthouse detail.

Fisher and McCarthy, by sworn testimony, both stated their duties included lighting the boiler which exploded causing Fisher serious injuries. According to Fisher, Ms. Mizzel called him in the office and asked him to watch "Billy," the AC/Heating service technician, to learn how to relight the pilot because the Parish could not afford to pay every time the boiler "went out." From that day to the time of the accident in question, Fisher stated he continued to relight the boiler when called to do so by Ms. Mizzel.

Fisher alleged: (1) The boiler explosion occurred because it was old and not properly maintained; (2) the Police Jury failed to provide proper maintenance for the boiler and gas piping in the building; (3) the Police Jury allowed him to engage in an ultra-hazardous activity without proper equipment, training or supervision; and (4) he was **performing his work** under the direction of the Police Jury's representatives.

The Police Jury filed a Motion for Summary Judgment asserting it had no notice of any defect in the boiler/furnace; and thus, under the provisions of La.R.S. 9:2800(C), it is not liable for any injuries to Fisher. Additionally, the Police Jury alleged under La.R.S. 15:708(H), inmates, such as Fisher participating in an inmate labor program, are denied a cause of action for injuries unless the

2

inmate can show intentional or gross negligence on the part of the Sheriff or the Police Jury. The Police Jury affirmatively raised this statutory immunity as a bar to recovery by Fisher for ***all claims and causes of action which may be asserted against it as a result of the explosion***. The trial court's summary judgment, which in part is based on the immunity granted in La. R.S. 15: 708(H), dismissed all of Fisher's claims and causes of action without reservation and with "full prejudice."

In its written reasons for judgment, the trial court found:

> Plaintiffs simply have failed to show that the courthouse furnace was defective and presented an unreasonable risk of harm on the date of the alleged incident. Additionally, the plaintiffs did not prove that CPPJ had actual or constructive notice of any alleged ruin, vice or defect prior to the occurrence. Therefore the "Motion for Summary Judgment" filed by CPPJ must be granted.

> Additionally, CPPJ is immune from any liability in this matter under Louisiana Revised Statute 15:708 and therefore the plaintiffs' claims must be dismissed pursuant thereto and for this additional reason the "Motion for Summary Judgment" filed by CPPJ must be granted.

The majority affirms the trial court ruling, finding Fisher cannot prove that actual or constructive notice was given to the Police Jury of the vice or defect which caused his injuries. The majority explains that "[a]ll that is necessary to affirm the trial court's judgment is the absence of factual support for one essential element of Mr. Fisher's claim." It finds "actual or constructive notice is conspicuously absent from this case," and rejects Fisher's attempt to apply the doctrine of *res ipsa loquitur*.[1] The majority does not address the immunity issue because it finds Fisher did not cross the "threshold" in "proving" liability on the part of the Police Jury because he did not "prove" it received notice of the vice or defect.

---

[1] The Majority writes the doctrine of res ipsa loquitur only addresses the issue of the standard of defendant's conduct and not the issue of constructive or actual notice. The latter issue, the Majority declares, cannot be presumed except as directed in La. R.S. 9:2800 which "allows; that is knowledge or notice is presumed if the defect has existed for such a period of time that the Police Jury should have reasonably discovered it." What? Where did this legal babble come from? It is not found in La. R.S. 9:2800(A) or La. Civ. Code Article 2317.

3

## EMPLOYEE STATUS

The trial court made no mention of Fisher's status as an employee of the Police Jury. The sworn statements of Fisher, McCarthy, the Sheriff, the Warden, the Police Jury's President, Ms. Mizzel, and Frankie Tolar clearly set forth sufficient facts to establish Fisher was working as a trustee laborer for the Police Jury at the time of the accident. Fisher alleged in his petition that he was working as an inmate trustee for the Police Jury at the time of the mishap. The Police Jury contends since the men allegedly were not authorized to light the pilot, they became trespassers. At all other times, even on the date in question and just minutes prior to the explosion, it is undisputed Fisher worked at the Courthouse as a janitor and maintenance laborer under the direct supervision of the Police Jury's employees. The immunity defense upon which the Police Jury relies in this case does not extend to *all* of Fisher's claims.

Louisiana's Workers' Compensation Act provides in La.R.S. 23:1034:

> The provisions of this Chapter shall apply to every person in the service of *the state or a political subdivision thereof*, or of any incorporated public board or commission authorized to hold property and to sue and be sued, *under any appointment or contract of hire, express or implied, oral or written* . . . and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory . . . .

La.R.S. 23:1044 also provides a person rendering service for another is presumed to be an employee. DOC inmate Trustees, who are performing services for a political subdivision, are not statutorily exempted from the application of this presumption. Further, the immunity from liability granted to governmental entities established in La.R.S. 15:708(H) is not all encompassing. First, the immunity applies only to tort actions and not to claims which may be raised pursuant to Louisiana's Workers' Compensation Act. And even as applied to tort claims, the immunity is not absolute. These government agencies are still liable for gross negligence and intentional acts. ***Moreover, and of great significance here, the***

4

*immunity mentioned in La. R. S. 15:708 (H) does not apply to DOC inmate Trustees such as Fisher*. Work release programs, like the one Fisher was voluntarily participating in, are regulated by La. R.S. 15:711, which provide in pertinent part:

> (B) Inmates sentenced to the Department of Corrections who are in the custody of the sheriff shall not be eligible for work release unless such inmates are in compliance with standards for work release within the department and written approval of the secretary of the department is obtained. If any inmate violates the conditions prescribed by the sheriff, his work release privileges may be withdrawn. Failure to report to or return from the planned employment shall be considered an escape under the provisions of R.S. 14:110.
>
> . . . .
>
> (F*) The wages of an inmate so employed shall be not less than the customary wages for an employee performing similar services….*

Unlike La. R.S.15: 708, which applies to inmates sentenced to serve their time in parish jails or awaiting transfer to state facilities, DOC trustee inmates released to local authorities for employment in work release programs are regulated exclusively by La. R. S. 15:711. This statute does not contain any immunity section. It also does not contain any language excepting these trustees from coverage under the Louisiana Workers' Compensation Act. This is so because these inmates have voluntarily consented to work outside the jails or prisons. Oftentimes, they are employed by private businesses, but in this case they were working for the Police Jury which actively sought their services.

The only exceptions to the payment of workers compensation benefits to persons who are incarcerated is found in La .R.S. 23:1201.4:

> A. Except as provided in Subsection B of this Section, the employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration, unless a workers' compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the workers' compensation judge and such payments shall be considered as having been made to the employee. After release from

5

incarceration, the employee's right to claim compensation benefits shall resume. An employee who is incarcerated but is later found to be not guilty of felony criminal charges or against whom all felony charges have been dismissed by the prosecutor shall have the prescriptive period for filing a claim for benefits under this Chapter extended by the number of days he was incarcerated.

B. **When an employee has been assigned to a work release or transitional work program and has been injured as a result of such assignment, the provisions of this Section shall not be construed to limit the obligation of the employer to pay medical expenses to a health care provider when such medical expenses would be otherwise compensable under the Workers' Compensation Act**.

Additionally, the Louisiana Workers' Compensation Act specifically provides in La. R.S. 23:13:

Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. . . .

The courts have long recognized that work release inmates are employees of their private employers and are entitled to workers' compensation benefits. In *Gobert v. S.W.D.I., L.L.C.,* 08-1598 (La.App. 1 Cir. 5/5/09), 13 So.3d 608, Mr. Gobert was a Louisiana Department of Public Safety and Corrections inmate working in a work release program when he was injured while riding on the back of a garbage truck. Gobert was employed by a private enterprise. Reversing the trial court's grant of an exception of no cause of action, the court held that "while [Gobert] [could] not collect workers' compensation benefits while he [was] incarcerated, he must be able to file his claim while he is incarcerated in order to preserve his right to collect benefits when he is released." *Id*. at 610. The same is true for Fisher. He has stated facts in his petition, and presented evidence in

6

connection with the Motion for Summary Judgment, which may entitle him to recovery under our workers' compensation laws.

The trial court erred in dismissing the Police Jury with prejudice from all claims presented by Fisher which have not yet prescribed. When a tort suit is filed prior to a workers' compensation claim it interrupts prescription of the workers' compensation claim. *Gatlin v. Cox Communication, Inc*. 03-32, p. 2 (La. App. 5 Cir. 4/30/01), 818 So. 2d 801, citing *Williams v. Sewerage & Water Board of New Orleans*, 92-1688 (La. 11/19/93), 633 So.2d 1383. The trial court made no ruling on the issue of Fisher's status. In this case, Fisher consented to participate in the work release program and consented to the special courthouse assignment. The Police Jury accepted Fisher's services and they directed and controlled his daily activities. [2] He alleges he was injured during the course and scope of performing his duties as a work release inmate for the Parish of Catahoula.

There are no reported cases that hold parishes or municipalities are exempted from the reach of Louisiana's Workers' Compensation Act or that inmate workers, like Fisher, do not acquire the status of employees while in the service of these governmental bodies. The courts have recognized only one exception to coverage of inmate trustee workers under the Workers' Compensation Act. The courts have held inmates who perform work in jails, at prison facilities, or on certain special road cleanup detail crews are not free to consent. These

---

[2] Fisher asserts, and Sheriff Kelly supports this assertion, Ms. Mizzel directed Fisher's daily activities, gave him daily instructions relating to maintaining the courthouse inside and outside the building, and controlled his work duties in the courthouse. He also says Mizzel instructed him to light the pilot. Fisher, McCarthy, the Sheriff, and the Warden testified inmates freely access the boiler room for supplies used in performing their daily maintenance of the courthouse, and that they freely go about the entire courthouse performing their assigned tasks which include mopping floors, emptying trash cans, cutting grass outside, and all such regular maintenance/custodial activities. Mizzel admits she would "ask," i.e. instruct, Trustees to do these type of services in the courthouse. She also admits, and Libby Ford, Police Jury President, confirms, that Mizzel is the Police Jury representative on-site in the courthouse overseeing the daily operation of the courthouse. Sheriff Kelly and Warden Montpelier also testified inmate Trustees freely access all areas of the courthouse throughout the day including the Sheriff's and judges' private offices even when such offices are empty. The Sheriff also testified Trustees do only what they are told to do and do not do what they are instructed not to do on pain of being returned to DOC.

inmates are stripped of the right to consent—a necessary component to any valid contract of employment.

It has long been declared that they possess the right to consent and enter employment relationships with private employers. See *White v. BHB Oil*, 45,173 p.6 (La.App. 2 Cir. 4/14/10), 34 So.3d 1115, 1119; *Clinton v. Reigel By-Products, supra.*; *Becnel v. Charlet*, 446 So.2d 466 (La. App. 4 Cir. 1984); *Parker v. State*, 353 So.2d 333 (La.App. 1 Cir. 1977), *writ denied*, 354 So.2d 1375 (La. 1978); La. Atty. Gen. Op. Nos. 00-501, 94-456, 79-1502. *See also Ardoin v. SWDI*, 05-334 (La.App. 3 Cir. 11/2/05), 915 So.2d 1012.

> Work-release inmates are employees of their private employers and are entitled to workers' compensation benefits. *See Clinton v. Reigel By-Products, Inc.*, 42,497 (La.App. 2d Cir. 9/19/07), 965 So.2d 1006, *writ not considered*, 2007-2239 (La.2/15/08), 976 So.2d 168; *Rogers v. Louisiana Department of Corrections*, 43,000 (La.App. 2d Cir. 4/30/08), 982 So.2d 252, *writ denied*, 2008-1178 (La.9/19/08), 992 So.2d 931; *Reynolds v. Louisiana Plastic*, 44,803 (La.App. 2 Cir. 10/28/09), 26 So.3d 149.

*White v. BHB Oil*, 45,173 p.6 (La.App. 2 Cir. 4/14/10), 34 So.3d 1115, 1119.

Furthermore,

> La.R.S. 15:711 authorizes the work release program for certain inmates and specifies that it is to be administered by the sheriff of the parish where the inmate is housed. **Work release inmates are not deemed to be employees of the state, but are considered the employees of their private employer and are entitled to workers' compensation benefits.** *See, Clinton v. Reigel By-Products, supra.*; *Becnel v. Charlet*, 446 So.2d 466 (La. App. 4 Cir. 1984); *Parker v. State*, 353 So.2d 333 (La.App. 1 Cir. 1977), *writ denied*, 354 So.2d 1375 (La. 1978); La. Atty. Gen. Op. Nos. 00-501, 94-456, 79-1502. *See also Ardoin v. SWDI*, 2005-334 (La.App. 3 Cir. 11/2/05), 915 So.2d 1012.

*Rogers v. Louisiana Dept. of Corrections* 43,000 p. 6 (La. 2 Cir. 4/30/08), 982 So.2d 252, 257 (emphasis added).

Fisher's petition clearly states material facts sufficient to set forth a claim under Louisiana's special Workers' Compensation Act. As indicated by the Louisiana Supreme Court in *Brewton v. Underwriters Insurance Co.*, 2002-2852

8

(La. 6/27/03, 848 So.2d 586, the underlying issue of whether Fisher was injured in a work related accident covered by the Louisiana Workers' Compensation Act is a jurisdictional issue which the trial court should entertain before proceeding on the tort claim. See *Rogers v. Louisiana Dept. of Corrections,* 43,000 (La. App. So.2d Cir. 04/30/08), 982 So.2d 252, *writ denied*, 2008-1178 (La. 09/19/08), 992 So.2d 931. Defendant's failure to raise the exclusive remedy defense in its motion for summary judgment or to file the appropriate exception does not confer jurisdiction on the trial court to dismiss Fisher's potential work injury claim by broadly applying the immunity found in La. 15: 708 (H).

## TORT CLAIM

### A.

### DEFECT OR UNREASONABLE RISK OF HARM: KNOWLEDGE VERSUS NOTICE REQUIREMENT

As far back as 1966, this court has held that "**boilers are dangerous instrumentalities**." *Marcotte v. Ocean Accident & Guaranty Corporation*, 189 So.2d 426, 429 (La.App. 3 Cir. 1966). In *Marcotte*, we faced a factual situation similar to the case at bar in a boiler explosion in the Avoyelles Parish Courthouse. In that case, the Avoyelles Parish Police Jury employed a custodian and janitor for the Courthouse, Mr. Marcotte. When Marcotte attempted to light the boiler to heat the Courthouse it exploded, severely injuring Mr. Marcotte. We recognized in *Marcotte* that *because boilers are dangerous instrumentalities* "the Legislature [has] seen fit to make rigid rules concerning their *use, maintenance and operation* in order to protect the general public[.]" *Id.*(emphasis added) In an *en banc Per Curiam* on rehearing we further held: "When a **statutory duty** exists to prevent foreseeable harm to others, and the failure to perform properly this duty is a substantial factor in producing the injury which the statutory duty is intended to prevent, then the person who breaches the statutory duty may be liable to the

9

injured person, with the breach being a proximate cause of the injuries for which suit is brought." (citation omitted) *Id*. at 430. In *Drago v. Dorsey*, 126 So. 724, 726 (La. App. Orleans, 1930) (emphasis added), a case concerning the explosion of an *old boiler*, the court held **the doctrine of** *res ipsa loquitur* **"is of peculiar applicability in cases of boiler explosions.**" The court explained:

> Defendant contends that plaintiff should have alleged and was called upon to prove the cause of the explosion. We disagree with defendant in this. The doctrine of "res ipsa loquitur" is plainly applicable here. In Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575, 576, Ann. Cas. 1912A, 976, which resulted from the explosion of a steam boiler, the allegation made by plaintiff was that the explosion "was caused by defendant's negligence, want of skill and attention; that defendant failed to care for said boiler, and by their negligence and want of skill and attention the boiler was weakened and unable to carry the steam pressure to which the defendant negligently subjected it." In overruling an exception of vagueness, the district judge said: "I have some doubts, but, considering that the defendants were in charge of the boiler, and have knowledge as to its conditions, and how it was being operated, I think that no injustice can be done by overruling the exceptions."

> When the matter went to the Supreme Court, Mr. Justice Provosty, as the organ of that court, in approving the ruling of the district court, used the following language: "We think this ruling was correct. In effect, the allegation is that the explosion is not to be attributed to any inherent defect in the boiler, but that it resulted, from defendant's want of care and skill in its operation. **This was a statement of the ultimate facts. Ordinarily, where only the ultimate facts are alleged, and particulars are called for, the court should require the pleader to give the particulars intended to be relied upon; but cases readily suggest themselves which ought to be an exception to that rule, and the present case would seem to be one of them, for the reason assigned by the learned trial judge, namely, that the manner of the operation of this boiler was peculiarly within the knowledge of the defendants. In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself-res ipsa loquitur-that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them**. The accident itself makes out a prima facie case, and the **burden is on defendant to show absence of negligence**. Res ipsa loquitur. *That rule is of peculiar applicability in cases of boiler explosions.*"

10

> **The burden, then**, by the application of the doctrine of "res ipsa loquitur," **was placed upon the defendant to prove that the explosion resulted from causes beyond its control**, and that **proper care and precautions in inspection and _operation_** could not have prevented it.

*Id.*, 725-26.

The Police Jury offered no proof that the "explosion resulted from causes beyond its control" *Id.*, and there certainly exists a genuine issue of material fact as to whether the Police Jury provided "proper care and precautions in inspection and operation" *Id.*, of the boiler. *The Police Jury admits it did not employ anyone licensed or trained to maintain the boiler.* Ms. Mizzel testified she does not recall that she ever called ACA Commercial Services, LLC (ACA) to come to the courthouse to light the boiler and does not recall ACA presenting any invoice for such service for nine years prior to the date of the explosion. The Police Jury did not produce any documents, either in response to discovery or at the hearing, to show its historical maintenance of the boiler. It provided no standard operational procedure to the trustees to whom it delegated the janitorial and maintenance duties. And it did not post any warning bulletin forbidding unauthorized personnel from entering the boiler room, relighting the boiler's pilot, or warning them of the danger associated with doing so. In its response to interrogatory number four requesting "a list of exhibits" which the Police Jury intended to use at trial it responded: "Since this lawsuit was just filed and discovery has just begun, defendant has not made a determination about which exhibits may be used at the trial of this matter." In its response to requests for production asking for any documents concerning this incident made before, during, or after the incident the Police Jury responded by saying the request was "vague and overbroad," but subject to that objection listed only the fire department report, the Sheriff's report, and ACA's service report after the incident. Additionally, in its answers to

11

interrogatories, the Police Jury states it is "not aware of any specific policies or procedures for inspection of the premises nor any such procedures for or written policies to follow when Police Jury agents, employees, or representatives discover a condition that could give rise to an injury." In further answers to interrogatories the Police Jury recites "ACA inspected and maintained the boiler on an as needed basis," but no copies of any invoices or documents evidencing such service through the years were presented in connection with the motion or provided in response to discovery pleadings filed by Plaintiff.

Ms. Mizzel testified in deposition she never told Warden Montpelier or the inmate trustees that they were not to be in the boiler room, and she admitted she would ask both the Warden and the trustees to do certain services in the courthouse. Fisher asserts, and Sheriff Kelly supports his assertion, that Ms. Mizzel directed his daily activities relating to maintaining the courthouse inside and outside the building. Fisher stated he would freely go in and out of the boiler room and Mizell directed him to light the pilot on many occasions. Additionally, in his affidavit, Fisher states that two weeks after the explosion the insurance company's adjuster came to the courthouse and did a walk-through with Fisher and McCarthy, a fellow Trustee, in the boiler room. Fisher states the adjuster concluded, after his inspection of the boiler, "**a big valve on the furnace was leaking and the emergency switch was not working.**" (emphasis added) The Fire Department's report, provided by the Police Jury in response to discovery, states "gas must have been built up inside the furnace and ignited causing an explosion …" ACA's service man's report, also provided by the Police Jury, surmises the "possible reason" for the explosion "is [that the] pilot was out and valve was stuck open. This caused boiler chamber to fill with gas, causing it to explode." This is direct evidence of a defect—at minimal it creates a genuine issue of material fact regarding the defective condition of the boiler. The Police Jury did

12

not offer any evidence contradicting this evidence. *It failed to offer any evidence that it fulfilled its duty to properly maintain and inspect the boiler. Moreover, it utterly failed to show it can prove "the explosion resulted from causes beyond its control, and that proper care and precautions in inspection and operation could not have prevented" the explosion. Id.*

Summary judgment in favor of the Police Jury is not appropriate in this case. Trial on the merit by summary judgment process is not permitted. The Police Jury presented "no evidence" of sufficient weight to require even a response from Plaintiff. All it did was to file a Motion for Summary Judgment full of self-serving conclusions, which are not supported by "undisputed facts." Although the excerpts from the depositions of the prisoners contain numerous pages, the Police Jury directs this court's attention to the prisoner's acknowledgment that they did not know of any defect in the boiler when they tried to light it, and they did not give prior notice to the Police Jury that a defect existed. Ipso, the Police Jury did not have prior notice of the defect and therefore it cannot be held liable for the explosion. End of story, Plaintiff loses. That's absurd!

The trial court applied the wrong statutory section of La.R.S. 9:2800. In *Demery v. Housing Authority of New Orleans*, 96-1024, p. (La. 4 Cir. 2/12/97), 689 So.2d. 659, 665 (emphasis added), the Fourth Circuit held "[T]hat actual or constructive notice [of a defect in a public building is] not required. *La.Rev.Stat. 9:2800(A) excludes the requirement of notice for defects of buildings*" owned and controlled by a public entity. Likewise, in *Jackson v. Beasley*, 30359, p. 6 (La.App. 2 Cir. 4/8/98), 712 So.2d 162, 166 (emphasis added) the court held:

> La.R.S. 9:2800, enacted in 1985, also greatly limited the liability of the state and its political subdivisions under Art. 2317 by requiring proof of actual or constructive notice of the vice or defect **except when the damage is caused by the condition of a building**. .
>
> . . . .

13

La.R.S. 9:2800(A) provides that "[a] public entity is responsible under LA.C.C.art. 2317 for damages caused by the condition of buildings within its care and custody." The Police Jury is required by La.R.S. 33:4715 to provide a "good and sufficient court-house" and a "good and sufficient jail." The Police Jury is also statutorily responsible for the physical maintenance of all parish jails and prisons. La.R.S. 15:702.

The requirement of actual or constructive notice applies only to "things" other than a building in the care and custody of a public entity. The Police Jury had a duty to keep its premises safe from unreasonable risk of harm and to warn of any dangers it knew of or *should have known of with the exercise of reasonable care*. La.R.S. 9:2800, and, *see Davis v. Burke's Outlet Stores*, 14-686 (La.App. 3 Cir. 12/10/14), ---So.3d. ---, 2014 WL 6966991. In *Davis*, a panel of this court, which included Judge Pickett, explained the basis for determining what constitutes an unreasonable risk of harm:

> Whether a condition is unreasonably dangerous is a determination of whether the defendant breached a duty owed, which the factfinder must determine in light of the facts and circumstances of each particular case. *Broussard*, 113 So.3d 175. In making that determination, the factfinder should consider the utility of the complained-of condition; the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; the cost of preventing the harm; and the nature of the plaintiff's activities in terms of its social utility, i.e., **whether or not it is dangerous by nature.**

*Davis*, page 4(emphasis added). There are numerous facts and circumstances in this case genuinely in dispute bearing on the determination of whether Fisher was exposed to a dangerous condition which presented an unreasonable risk of harm.

The boiler or furnace in this case and the natural gas line supplying gas to it are component parts of the courthouse building by legal definition provided in La.Civ.Code art. 466 (emphasis added):

> Things that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific use, are its component parts. **Component parts of this kind may include** doors, shutters, gutters, and cabinetry, as well as **plumbing**, **heating**, cooling, electrical, and similar systems….

14

Not only is the boiler or furnace which exploded a component part of the building, **it is an unreasonably dangerous instrumentality highly regulated by state laws**. La. R.S. 23:536-46. It also is connected to **a natural gas line which is also an unreasonably dangerous thing**. Louisiana Revised Statute 23:536 provides in pertinent part:

A. Each power boiler and high-pressure, high temperature water boiler used or proposed to be used, except boilers exempt under R.S. 23:540 and except as otherwise provided in this Part, shall receive a certificate inspection annually which shall be an external inspection while the boiler is under normal operating conditions. *Such boilers shall also be inspected internally where construction permits at about six months after each external inspection.* Except as provided in Subsection B, no more than fourteen months shall elapse between internal inspections. However, any power boiler, the operation of which is an integral part of or necessary adjunct to other continuous operations, shall be inspected internally and issued certificates at such intervals as are permitted by planned or scheduled shutdown of the processing operation of five days or more in duration occurring after three years have elapsed since the last inspection of the boiler, but not exceeding five years between such intervals.

B. Upon the approval of the assistant secretary or his designated representative, for the purpose of controlling and limiting corrosion and the interval between internal inspections may be extended for a period not to exceed twenty-four months on stationary boilers provided: (1) continuous water treatment under competent and experienced supervision has been in effect since the last internal inspection deposits, (2) accurate and complete records are available showing that since the last internal inspection samples of boiler water have been taken at regular intervals not greater than twenty-four hours of operation and that the water condition in the boiler is satisfactorily controlled, (3) accurate and complete records are available showing the dates, if any such boiler has been out of service and the reasons therefor since the last internal inspection, and such records shall include the nature of all repairs to the boiler, the reasons why such repairs were necessary and by whom the repairs were made, and (4) the last internal and current external inspection of the boiler indicates the inspection period may be safely extended. When such an extended period between internal inspections has been approved by the assistant secretary or his designated representative, as outlined in this Section, a new certificate of operation shall be issued for that extended period of operation, and the inspection certificate fees shall be double the annual fees provided by law.

C. (1) Low pressure boilers shall receive a certificate inspection biennially.

15

(a) Steam or vapor boilers shall have an external inspection and an internal inspection every two years where construction permits;

(b) Hot water heating and hot water supply boilers shall have an external certificate inspection every two years and where construction permits, an internal inspection at the discretion of the inspector; and

(c) Potable water boilers shall have an external certificate inspection every two years.

(2) Inspections shall include the functions of all controls and devices. If at any time a hydrostatic test is deemed necessary to determine the safety of a boiler, the test shall be made at the discretion of the assistant secretary or his designated representative.

In its written reasons for judgment, the trial court set forth the provisions of

La.R.S. 9:2800 and emphasized the language in the statute upon which it relied in

granting summary judgment as follows:

Except as provided for in subsections A and B of this section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

It is apparent from the underscored language the trial court committed legal error

by relying on the prior notice requirement of La. R.S. 9:2800 in summarily

dismissing Plaintiff's case. It is Section (A) which applies in this case. The cases

relied upon by the trial court are not applicable. Further, none of the cases relied

upon by the trial court involve a building owned by a public entity. *Boland v. West*

*Feliciana Parish Police Jury*, 03-1297 (La.App. 1 Cir. 6/25/04), 878 So.2d 808,

concerns the condition of a bridge; *Bessard v. State. D.O.T.D.*, 645 So.2d 1134

(La. 11/30/94) concerns a hole in concrete curbing; *Henderson v. Nissan Motor*

*Corp.*, 03-606 (La.2/6/04), 869 So.2d 62, is an auto accident case involving the

condition of a roadway maintained by DOTD; *Hardenstein v. Cook Constr., Inc.*,

96-829 (La.App. 1 Cir. 2/14/97), 691 So.2d 177, is an auto accident case involving

highway repairs; and *Toston v. Pardon,* 03-1747 (La. 4/23/04), 874 So.2d 791, is

16

also an auto accident case concerning signage at an intersection. The trial court clearly erred as a matter of law. Likewise, the only case cited by the present Majority in affirming the trial court, *Jagneaux v. Lafayette City-Parish Consol. Gov't Parks and Recreation*, 13-768 (La.App. 3 Cir. 12/11/13), 128 So.3d 681, is likewise inapplicable to this case. *Jagneaux* involves the determination of liability concerning the condition of bleachers on the baseball field, a "thing," in the custody and control of the public entity subject to the requirements of notice, not, as here, a "building" specifically exempted from the notice requirement.

Here, Plaintiff's burden is not so onerous. He was not required to "prove" the Police Jury had prior or constructive notice of the alleged defect or the unreasonably dangerous condition. When the author of this opinion was reminded of this legal fact, he simply made reference to the "knew or should have known language" in La. Civ. Code art. 2317.1, before again returning to his flawed analysis and concluding Plaintiff did not "prove" the Police Jury received prior notice of the defect. Thus, the Majority's circuitous reasoning was completed—**No Notice, No Recovery!** Incredibly, the Majority also states: "The boiler was regularly inspected before this incident, with no problems noted." This factual conclusion is not based on a shred of evidence in the record, except perhaps the disputed self-serving statements of Ms. Mizzel. The Police Jury did not produce in response to Plaintiff's discovery motions or in support of the present motion a single inspection report prior to the explosion, let alone one that proclaimed the thirty year old boiler had "no problems."

To grant summary judgment in this case both the trial judge and this Court had to weigh the facts and credibility of the witnesses or ignore the record evidence altogether. In the end they had to ascribe 100% credibility to Ms. Mizzel and ascribe absolutely no credibility to Sheriff Kelly, Warden Montpelier, Mr. Fisher or Mr. Marcus McCarthy.

17

Sheriff Kelly and Warden Montpelier both testified that inmate Trustees have free and open access to the boiler room as well as to all offices in the courthouse including judges' offices, and the Sheriff's private office, even when no one else is in those offices. This is so, says the Sheriff, because Trustees such as Fisher have *proved their trustworthiness before being sent to him by DOC.* Additionally, the Sheriff testified *Trustees do only what they are told to do* on pain of being returned to a state penal facility for doing something they have not been told to do. Fisher testified Ms. Mizzel, as the Police Jury representative, gave him his daily instructions and controlled his work duties. This testimony supports Fisher's assertion that he was instructed by the Police Jury's representative at the courthouse, Ms. Mizzel, to light the pilot on the boiler when cold weather was approaching and to re-light the pilot whenever he would discover it had been extinguished. Ms. Mizzel, and Police Jury President, Ms. Libby Ford, contend that no one on the Police Jury ever directed Fisher to light the pilot light on the boiler, and Ms. Mizzel says she had no knowledge of the pilot light ever going out for any reason for a period of nine years. There is substantial testimony that the pilot on this boiler did not burn continuously through all seasons; and it often required relighting after being extinguished by the draft created from opening the entry door to the boiler room. *But even Ms. Mizzel's credibility cannot be judged on a motion for summary judgment.* These alleged facts are genuinely disputed and material in determining whether Fisher was exposed to an unreasonable risk of harm which the Police Jury knew or should have known existed.

Neither can this Court ignore other evidence in the record pointing to the existence of a defect in the boiler. The ACA Air Condition Tech's service report notes the "possible reason" for the explosion "is [that the] pilot was out and valve was stuck open. This caused boiler chamber to fill with gas, causing it to explode." A leaking valve and stuck emergency switch which allows gas to build

18

up inside the chamber and cause an explosion when anyone attempts to light the pilot is evidence of a "defect" in the boiler. Fisher stated the Insurance Adjuster, after inspecting the boiler following the explosion, concluded "a big valve on the furnace was leaking and the emergency switch was not working." The Fire Department report states "gas must have been built up inside the furnace and ignited causing explosion."

Nothing in the record even suggests that Fisher and/or McCarthy intentionally caused the explosion. In fact, both Mizzel and Ford testified that no one on the Police Jury brought any charges against Fisher or McCarthy for criminal trespass or criminal damage to property, despite Ms. Ford's describing Fisher as "a trespasser." Both the Sheriff and the Warden, along with Fisher and McCarthy, testified that inmates have free access to the boiler room and come and go at-will to and from that room for supplies used in performing their maintenance of the courthouse just as they freely go about the entire courthouse. Mizzel admits she never told the Warden or the Trustees they could not go in the boiler room.

The majority cites *Swido v. Lafayette Ins. Co.*, 04-1674 (La.App. 3 Cir. 11/2/05), 916 So.2d 399, *writ denied*, 05-2509 (La. 3/31/06), 925 So.2d 1261, for the proposition that "unsworn and unverified documents do not warrant consideration in determining a motion for summary judgment, because they do not constitute admissible evidence." Thus, the two judges on appeal proceeded to ignore all the direct evidence of the defect Fisher presented in connection with the Motion for Summary Judgment. The "report from ACA Commercial Services, LLC," attached as Exhibit "C" in filed in the record, was provided by the Police Jury to the Plaintiff in response to discovery pleadings. In further response the Police Jury stated that its insurance agent conducted an investigation of this incident. In its response to production of documents, the Police Jury provided photographs of the boiler, the Harrisonburg Volunteer Fire Department report, the

19

Catahoula Parish Sheriff's Office report, and the ACA Commercial Services, LLC service report. Though mentioned, it did not produce a copy of the Insurance Adjuster's report. It promised to provide any other documents as such became available. Fisher attached to his affidavit the documents provided to him by the Police Jury in response to discovery and entered into evidence at the motion for summary judgment all of the Police Jury's responses to interrogatories and requests for production.

Louisiana Code of Civil Procedure Article 966 ( effective August 1, 2013 to July 1, 2014) provides that a motion for summary judgment is supported, or opposed by "pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment" Under La.Code Civ. P. art. 966(F), (effective August 1, 2013 to July 31, 2014), these items are deemed admissible and are appropriate for consideration on summary judgment:

> Evidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection made in accordance with Subparagraph (3) of this Paragraph. Only evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion.

The Majority acknowledges that La. Code of Civil Procedure article 966(F) (2) and (3) as amended "deems" the reports submitted as attachments to Fisher's response to the Motion for Summary Judgment admitted in evidence. But the Majority complains: "This conflict within article 966 raises the question of whether these two exhibits should be considered at all; clearly, before Act 391, they would not have been." What conflict? While the Majority may question the wisdom of the Legislature; the two members do not have authority to ignore laws passed by it.

20

The majority also concludes that Fisher and McCarthy's affidavits pose "a similar issue" in so far as they contain hearsay, i.e. what the insurance adjuster said to Fisher and McCarthy when he inspected the boiler after the explosion.

In *Rhodes v. Executive Risk Consultants, Inc*., 26021, p. (La.App. 2 Cir. 8/17/94), 642 So.2d 269, (emphasis added) the Second Circuit said:

> The motion for summary judgment is a procedural device to avoid a full scale trial **where there is no genuine factual dispute**. The **mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such an issue must be resolved against granting the motion.** *Ouachita Nat'l Bank v. Gulf States Land & Development Inc., 579 So.2d 1115 (La.App. 2d Cir.1991), writ denied, 587 So.2d 695 (La.1991)*.
>
> To satisfy this burden, **the mover must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.** The papers supporting the mover's position are to be closely scrutinized while **the opposing papers are to be indulgently treated in determining whether mover has satisfied his burden. When the court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion**. *Ouachita Nat'l Bank v. Gulf States, supra.*
>
> If the supporting documents presented by the moving party are insufficient to resolve all material facts at issue, summary judgment must be denied. If sufficient, the burden shifts to the opposing party to present supporting evidence showing that material facts are still at issue. LSA-C.C.P. Art. 967. **A summary judgment is not a substitute for a trial on the merits**. *Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir.1983)*.

When viewed in a light most favorable to Fisher, the reasonable inferences from the exhibits attached to Fisher's affidavit which were provided to him by Defendant as part of its business records in response to discovery are telling and suggest a reasonable basis for finding Defendant liable. As in Rhodes, "real doubt as to the existence of material fact cannot be excluded." At minimum these submissions create a genuine issue regarding the existence of a defect and whether the Police Jury "should have known" of this defect by virtue of its obligation to

21

maintain, and have trained technicians regularly service, the aging boiler. There is nothing in this record establishing or remotely suggesting that a leaking valve and a stuck emergency switch are common occurrences or expected events in the life of properly maintained boilers.

No one had to tell the Police Jury anything! Louisiana Civil Code Article 2317.1 (emphasis added) provides:

> The owner or custodian of a thing is answerable for the damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, **in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage**, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitor in an appropriate case.

The Police Jury had a statutory duty to properly inspect and maintain the boiler. Other than Mizzel's testimony, the Police Jury put forth **no evidence to establish it properly maintained** the boiler as it is required by statute to do. In fact, the evidence on summary judgment shows that the Police Jury did not have a qualified person hired to operate and maintain the boiler but instead used unskilled and untrained inmate Trustees.

The law prescribes criminal penalties for the operation of such boilers without the required inspection certificates. The statutes regulating the installation, inspection, and maintenance of boilers are indicative of their inherently dangerous nature and the absolute necessity that they be regularly maintained only by certified, licensed and trained individuals, not by unskilled, unschooled prisoner-Trustees.

## B.

## RES IPSA LOQUITUR

The Majority's decision to disregard all of the direct evidence of a defect presented by Plaintiff makes this case one which must as a consequence rest on

22

circumstantial evidence on appeal. The doctrine of *res ipsa loquitur* is applicable in circumstantial evidence cases. Louisiana Civil Code Article 2317.1 specifically provides "[n]othing in this article shall preclude the court from the application of the doctrine of *res ipsa loquitor* in an appropriate case." This case on summary judgment is "peculiarly" suited to applying the doctrine of *res ipsa loquitur*. *Drago*, 126 So. at 726. A boiler should not explode when the pilot is relit in the absence of negligence or action of the plaintiff or a third party. There is no evidence that Plaintiff or a third party caused the boiler to explode. Defendant had the duty to guard against the defect by securing the service of certified and trained technicians to properly maintain and repair the boiler. Plaintiff may rely on the doctrine of *res ipsa loquitur* to supply an inference that a defect existed which was occasioned by defendant's lack of care--negligence. See *Linnear v. Centerpoint, 06-3030 (La. 2007), 966 So.2d 36.* There is no dispute plaintiff was injured during the explosion.

## C.

## IMMUNITY

The trial court also erred in finding the Police Jury was immune from suit under the provisions of La.R.S. 15:708. (The majority deems it unnecessary to discuss this immunity provision under its holding.) According to Sheriff Kelly, Fisher is a Louisiana Department of Corrections inmate classified as a "Class 'A'" Trustee on loan to the Parish as a Trustee from DOC. Plaintiff was sentenced to ten years imprisonment for three felony offenses. He is not an inmate "*sentenced to a parish prison.*" Louisiana Revised Statute 15:708, by its express terms, applies only to "a prisoner sentenced to a parish prison of any parish of the state, by any court of competent jurisdiction, or a prisoner in a parish prison awaiting transfer to a state correctional facility." La.R.S. 15:708 (A)(1), (2)(a), (3)(a), and (4). The provisions also apply to "a person convicted of a misdemeanor for

23

violation of any state law or any parish or municipal ordinance and is sentenced to imprisonment" and ordered by the court "to participate in a court-approved workday release program." La.R.S. 15:708 (D)(1)(a). These provisions are inapplicable to Plaintiff because he is not a person covered by this statute.

Additionally, the statute by its express terms is not applicable when injury is "caused by the intentional or *grossly negligent* act or omission" of a public body, and such gross negligence is "a substantial factor in causing the injury." There is a genuine issue of material fact in this case as to whether the Police Jury was grossly negligent in causing Plaintiff's injuries. There is testimony that the Police Jury instructed Plaintiff to light the boiler despite the fact that he is not trained nor certified to attend a boiler of this magnitude. If this proves to be true at trial it may form a basis for the trier of fact to find the Police Jury was grossly negligent. Because Ms. Mizzel disputes this testimony that does not mean what she says must be accepted as true. Doing so requires a credibility call which we are not permitted to do on summary judgment. This boiler, fueled by natural gas, is a dangerous instrumentality regulated by state laws which require that only certified, trained individuals maintain and attend it. This is so because of the inherent dangers posed by such large commercial, gas-fueled boilers, *the most likely hazard being an explosion*. The Police Jury's admitted reason for its failure is that it could not financially afford to pay for the proper maintenance of this dangerous instrumentality. The Sheriff, Fisher, and the President of the Police Jury, Ms. Elizabeth "Libby" Ford, testified that the Police Jury does not have a custodian or maintenance person hired to attend the courthouse, but instead, uses Trustees such as Fisher to maintain the courthouse.

All of the admitted facts create a genuine and material issue regarding whether the Police Jury was grossly negligent in exposing Fisher to an unreasonable risk of harm. Further, it is an undisputed fact that the doors leading

24

to the room housing the boiler are not locked and are accessible to anyone, including Plaintiff and members of the public. Sheriff Kelly and Warden Montpelier testified, as did Fisher, that Trustees do in fact go in and out of the boiler room at-will to retrieve supplies for maintenance of the courthouse. Ms. Mizzel admits she never told the Warden or the Trustees not to go in the boiler room. There are no signs warning that anyone but a licensed and qualified person should not attempt to light the boiler or service it in any manner. *And, there is testimony that Ms. Mizzel was aware the pilot light on the boiler had to be repeatedly lit because the opening and closing of the unlocked doors to the boiler room cause the pilot light to be extinguished.* The trier of fact might well conclude the Police jury was grossly negligence (1) in failing to take measures to prevent the boiler pilot flame from extinguishing when the door opened; (2) in failing to lock the door to the boiler room and allowing only qualified service men to enter it; (3) in instructing an inmate trustee to relight the pilot; and (4) in failing to alert the untrained trustees not to light the pilot but to call for a certified technician.

## CONCLUSION

As noted we have repeatedly held that the court may not engage in credibility determinations or weighing of evidence on summary judgment. As this court stated in *Fusilier v. Dautrive*, 99-692 (La.App. 3 Cir. 12/22/99), 759 So.2d 821, 831, *reversed on other grounds by* 2000-151 (La.7/14/00), 764 So.2d 74 (emphasis added):

> The first issue that must be addressed in reviewing a trial court's grant of summary judgment is whether any genuine issues of material fact exist. *Smith v. Our Lady of the Lake Hosp. Inc.,* 93-2512 (La.7/5/94); 639 So.2d 730, *appeal after remand,* 96-1837 (La.9/27/96); 680 So.2d 1163. The reviewing court must next address whether reasonable minds could conclude, based on the facts presented, the mover is entitled to judgment. *Id.* In other words, summary judgment is appropriate when all relevant facts are brought before the court, **the relevant facts are undisputed**, and **the sole issue remaining is the conclusion to be drawn from the relevant facts.** *Id*

25

As we have also often stated: "*Issues of credibility have no place in summary judgment procedure. Hinds v. Clean Land Air Water Corp.*, 96-1058 (La.App. 3 Cir. 4/30/97), 693 So.2d 321. Any of the State's conclusions, which are contained within the records, *cannot be substituted for the fact-finding process provided by a trial.*" *Carriere v. State*, 708 So.2d 822, 824 (La. 3 Cir. 1998) (emphasis added). **Summary judgment is not a substitute for a trial on the merits**.

> "It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented. While deposition testimony may be used to support or oppose a motion for summary judgment, **it may not be weighed**." *Lexington House v. Gleason,* 98-1818, p. 6 (La.App. 3 Cir. 3/31/99); <u>733 So.2d 123, 126</u> (citations omitted).

*Mouton v. Sears Roebuck*, 99-669 (La.App. 3 Cir. 11/31/99), 748 So.2d 61,67, *writ denied,* 99-3386 (La.2/4/00), 754 So.2d 232 (emphasis added). Fisher has submitted substantial evidence which creates many genuine issues of material fact which should be resolved by the trier of fact in this matter after full trial on the merits.

The facts alleged within the four corners of Plaintiff's petition must be accepted as true. Plaintiff is not required to respond to arguments in memorandum or briefs filed by defense counsel supporting the Motion for Summary Judgment. Plaintiff is only required to counter testimony, documents, and/or answers to interrogatories that, if left unrefuted, affirmatively disposes of material issues in the case or overwhelmingly establishes the true and controlling facts in the case. All we have here is the testimony of Ms. Mizzel and Ms. Ford who essentially said they don't know what happened, cannot recall almost everything relevant, and otherwise provide self-serving denials of giving the inmate Trustees permission or instruction to do what they did. This simply is not enough to even have deserved a

26

hearing below. This case is in no way ripe for summary judgment in favor of the Police Jury.